**NATIONAL ADVERTISING COMPANY, Plaintiff,**

v.

**TOWN OF BABYLON, et al., Defendants.**

**No. CV 88–0105.**

United States District Court, E.D. New York.

Jan. 4, 1989.

Hunton & Williams, by Franklin H. Stone, New York City, for plaintiff.

Thomas F. Whalen, Babylon Town Atty., Lindenhurst, N.Y., for defendant Town of Babylon.

Guy W. Germano, Islip Town Atty. by Lawrence Dononue, Islip, N.Y., for defendant Town of Islip.

Robert Schmidt, Oyster Bay Town Atty., Oyster Bay, N.Y., for defendant Town of Oyster Bay.

W. Kenneth Chave, Hempstead Town Atty. by Daniel F. McCarthy, Hempstead, N.Y., for defendant Town of Hempstead.

William F. Glacken, Freeport, N.Y., for defendant Inc. Village of Freeport.

Edward Young, West Babylon, N.Y., for defendant Inc. Village of Lindenhurst.

WEXLER, District Judge.

## BACKGROUND

Plaintiff National Advertising Company ("National"), a subsidiary of Minnesota Mining and Manufacturing Company ("3M"), a Delaware corporation, brings this action pursuant to 42 U.S.C. § 1983 against the Town of Babylon ("Babylon"), the Village of Freeport ("Freeport"), the Town of

Hempstead ("Hempstead"), the Town of Islip ("Islip"), the Village of Lindenhurst ("Lindenhurst"), and the Town of Oyster Bay ("Oyster Bay")[1] claiming that various sign ordinances of the defendant towns and villages violate plaintiff's right to free speech under the First and Fourteenth Amendments to the United States Constitution. Plaintiff originally moved for the entry of a preliminary injunction barring defendants from enforcing their ordinances during the pendency of this case. After conducting a hearing on plaintiff's motion, this Court gave the parties notice that, pursuant to Fed.R.Civ.P. 56, the Court would treat plaintiff's preliminary injunction motion as a motion for summary judgment seeking permanently to enjoin defendants from enforcing the challenged ordinances.

National is a company engaged in the business of outdoor advertising. In order to conduct its business, National leases real estate upon which it erects and maintains outdoor sign structures commonly known as billboards. National in turn leases space on these billboards to persons or entities wishing to communicate messages to the viewing public. National is the second largest outdoor advertising company in the country with roughly a twenty percent market share of a billion dollar industry. Statistics indicate that approximately ninety-eight percent of the billboards National leases contain advertising displays of a commercial nature, while the remaining two percent convey non-commercial messages.

Within each of the defendant towns and villages, National has obtained leasehold interests in areas zoned for commercial or industrial use. National wishes to erect on these properties billboards which will carry both commercial and non-commercial messages that are unrelated to the products sold or activities conducted at these locations. National asserts that the defendants' ordinances prohibit it from erecting such signs. Furthermore, National contends that, since the ordinances favor commercial speech over non-commercial speech, they are facially unconstitutional in light of the Supreme Court's ruling in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) and, thus, may not be enforced so as to restrict plaintiff from erecting and maintaining its signs.

## JURISDICTIONAL CONCERNS

Several of the defendant towns and villages raise one or more challenges to plaintiff's ability to pursue this action. This Court finds all of defendants' contentions in this regard to be completely without merit.

First, certain defendants argue that plaintiff lacks standing to challenge the ordinances at issue because it is not plaintiff's own speech that is allegedly being abridged and because only two percent of plaintiff's business is derived from the expression of non-commercial messages. The Supreme Court's plurality opinion in *Metromedia* addressed the issue of standing and rejected the same position defendants now urge this Court to adopt. *Metromedia*, 453 U.S. at 504, 101 S.Ct. at 2890.

In *Metromedia v. City of San Diego*, 26 Cal.3d 848, 869 n. 14, 164 Cal.Rptr. 510, 522 n. 14, 610 P.2d 407, 419 n. 14 (1980), *rev'd*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the California Supreme Court found the plaintiff, an outdoor advertising business, to be without standing to challenge San Diego's sign ordinance. In reversing this decision, the United States Supreme Court noted that, although the vast majority of plaintiff's signs were leased for the purpose of displaying commercial messages, plaintiff had standing to bring the suit pursuant to the overbreadth doctrine because its signs were also used to carry a host of non-commercial messages. The plurality opinion in *Metromedia* stated:

> We have held that the overbreadth doctrine, under which a party whose own activities are unprotected may challenge

---

1. When National first commenced this action it also named as defendants the Town of Brookhaven and the Village of Amityville but subsequently withdrew its claims against these defendants.

a statute by showing that it substantially abridges the First Amendment rights of parties not before the court, will not be applied in cases involving "commercial. speech." *Bates v. State Bar of Arizona,* 433 U.S. 350, 381[, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810] (1977). However, we have never held that one with a 'commercial interest' in speech also cannot challenge the facial validity of a statute on the grounds of its substantial infringement of the First Amendment interests of others. 453 U.S. at 504 n. 11, 101 S.Ct. at 2891 n. 11. Therefore, National's standing is not impaired by the fact that it has a commercial motive for asserting the constitutional rights of others to engage in non-commercial communication or that displays of non-commercial messages comprise only two percent of its business.

█ In addition to satisfying the standing requirement under the overbreadth doctrine, plaintiff derives the ability to sue from the principle of third party standing. Clearly, National meets the threshold test of alleging an "injury in fact" sufficient to give rise to a case or controversy. *See Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The remaining question, then, is whether National may assert the right of a third party adversely affected by the ordinances. The Court answers this question affirmatively. In *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), a plurality of the Supreme Court recognized the right of male doctors to seek injunctive and declaratory relief from a Missouri statute denying Medicaid benefits to patients who obtained abortions that were not medically required. In reaching its decision, the plurality examined the relationship between the litigant and those whose rights the litigant sought to assert on the theory that "[i]f the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit." 428 U.S. at 114–15, 96 S.Ct. at 2874. The Court further concluded

that in many situations the relationship may be such that the litigant is just as effective an advocate of the right being asserted as is the party in whom the right is vested. 428 U.S. at 115, 96 S.Ct. at 2874. The Supreme Court reached a similar result in *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *reh'g denied,* 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed. 2d 574 (1977), upholding the standing of a plaintiff in the retail beer industry to assert the rights of male patrons to equal protection against a law prohibiting the sale of beer to males under age 21 and females under age 18.

In the instant case, the right of a person or entity wishing to display a non-commercial message on an outdoor sign structure is inextricably tied to the activity of the lessor of such space. Just as was true of the doctor in *Singleton* and the beer vendor in *Craig,* National, or a like company, offers a service that is essential to that third party's exercise of its constitutional right. Also, National would, in all likelihood, be as vigorous a proponent of the right being asserted as the right holder would be. Furthermore, defendants have failed to bring to this Court's attention any instance where a court faced with a First Amendment challenge to a sign ordinance by a plaintiff in the outdoor advertising business has dismissed the action for lack of standing. Therefore, this Court holds that National has standing to maintain its action.

█ This Court similarly rejects the position of those defendants that contend that plaintiff is not entitled to the relief sought due to its failure to exhaust its administrative remedies. These defendants argue that as a prerequisite to bringing this action National must have first sought and been denied a permit for the signs it desires to erect. This argument, however, ignores the fact that plaintiff's challenge to the various ordinances is that they are facially unconstitutional, not that they have been unconstitutionally applied. A plaintiff is not required to "test" a statute which is unconstitutional on its face. "The Constitution can hardly be thought to deny

to one subjected to the restraints of such an ordinance the right to attack its constitutionality because he has not yet yielded to its demands." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (*quoting Jones v. Opelika*, 316 U.S. 584, 602, 62 S.Ct. 1231, 1242, 86 L.Ed. 1691 (1942) (Stone, C.J. dissenting), *adopted per curiam on reh'g*, 319 U.S. 103, 104, 63 S.Ct. 890, 87 L.Ed. 1290 (1943)). *See also Natco Theatres, Inc. v. Ratner*, 463 F.Supp. 1124, 1126 (S.D.N.Y.1979). In any event, the issue of exhaustion, like that of ripeness, "is now very much a matter of common sense." *Seafarers Inter. Union of North America, AFL–CIO v. U.S. Coast Guard*, 736 F.2d 19, 26 (2d Cir.1984). Common sense dictates that National need not first go through the motions of seeking permits for the erections of signs that, as is discussed below, the clear language of each of the defendants' ordinances declares must be denied.

■ Finally, several defendants maintain that The Federal Highway Beautification Act, 23 U.S.C. § 131(a), acts as a prohibition on plaintiff's request for injunctive relief. The Court is unpersuaded by defendants' position. While the Court takes notice that this Act is designed to encourage states to control construction of billboards along interstate highways, the Court also recognizes that the Act was not intended as a vehicle under the auspices of which municipalities may abridge First Amendment rights. It is hardly inconceivable that a regulation may further the purpose of a federal statute yet simultaneously violate the requirements of the constitution. Defendants have pointed to nothing in The Federal Highway Beautification Act that would give this Court pause to reach the question of whether the ordinances presently at issue are constitutional.

2. The ordinance at issue in *Metromedia* permitted only signs "which are either signs designating the name of the owner or occupant of the premises upon which such signs are placed, or identifying such premises; or signs advertising goods manufactured or produced or services

## IMPACT ON COMMERCIAL SPEECH

In *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumers Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Supreme Court for the first time expressly recognized that commercial speech is entitled to constitutional protection. The Court held that, although commercial speech should not be given the same degree of protection as that which is accorded forms of non-commercial speech, the mere fact that a speaker's "interest is a purely economic ... hardly disqualifies him from First Amendment protection". 425 U.S. at 762, 771–72 n. 24, 96 S.Ct. at 1826, 1830–31 n. 24.

Thereafter, in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court reaffirmed its holding in *Virginia State Bd.* and established a four-part test for determining the validity of governmental regulations restricting commercial speech. This test was further refined in *Metromedia* as follows:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia*, 453 U.S. at 507, 101 S.Ct. at 2892 (citing *Central Hudson*, 447 U.S. at 563–66, 100 S.Ct. at 2350–51).

In *Metromedia*, the Court held that a city ordinance which allowed on-premise commercial advertising [2] but prohibited most other forms of outdoor commercial advertising displays satisfied the requirements of the *Central Hudson* test. 453 U.S. at 513, 101 S.Ct. at 2895. As to the first criterion of *Central Hudson*, the Court found that the form of commercial

rendered on the premises upon which signs are placed." *Metromedia*, 453 U.S. at 493 n. 1, 101 S.Ct. at 2885 n. 1 (quoting San Diego Ordinance No. 10795 (New Series), enacted March 14, 1972).

speech being regulated in *Metromedia* was lawful and not misleading, and thus merited First Amendment protection. *Metromedia*, 453 U.S. at 507, 101 S.Ct. at 2892. Next, the Court determined that the city's asserted interest in restricting commercial advertising—the amelioration of alleged traffic hazards caused by distracting sign displays and improvement and preservation of the city's physical appearance—was substantial and, therefore, satisfied the second requirement of the four-part test. 453 U.S. at 507–08, 101 S.Ct. at 2892–93. The Court next turned to the fourth element of the *Central Hudson* test and concluded that the ordinance was not broader than necessary to achieve the city's stated goals, expressing its view that "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs." 453 U.S. at 508, 101 S.Ct. at 2893.

The Court regarded as most troublesome the third criterion of its *Central Hudson* analysis, *i.e.*, the question of whether the ordinance directly advanced the city's asserted interests of safety and aesthetics. 453 U.S. at 508, 101 S.Ct. at 2893. As to the city's asserted goal of promoting safety, the Court simply deferred to "the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety" and that limitations placed upon their erection do directly contribute to safer roadways. 453 U.S. at 509, 101 S.Ct. at 2893. Likewise, with regard to the city's aesthetic interests, the Court stated: "It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm'.... The judgment involved here [by the city] is not so unusual as to raise suspicions in itself [of an ulterior motive to suppress speech]." 453 U.S. at 510, 101 S.Ct. at 2893–94.

Before ending its analysis, the Court addressed the argument that the city, by permitting any form of commercial or noncommercial advertising, had denigrated its asserted bases for the ordinance—traffic safety and aesthetics—and diminished its own case. 453 U.S. at 510–11, 101 S.Ct. at 2894. The Court rejected this contention, noting that the underinclusive nature of the ordinance in no way altered the fact that the prohibition of offsite advertising directly advanced the city's stated regulatory goals. 453 U.S. at 511, 101 S.Ct. at 2894. In addition, the Court recognized the possibility that the city might have understandably believed that offsite advertising presented "a more acute problem than [did] onsite advertising." *Id.* Finally, the Court accepted the city's conclusion that the public and commercial enterprises themselves have a stronger interest in the identification of a place of business and the products and services available there than in the use of available space for the promotion of business enterprises located elsewhere. 453 U.S. at 512, 101 S.Ct. at 2894–95.

In considering the constitutionality of the ordinances with which plaintiff takes issue vis-a-vis their effect on commercial speech, this Court must apply the four-part *Central Hudson* test to the facts presented. In doing so, it quickly becomes apparent that the Supreme Court's decision in *Metromedia* largely governs such an analysis, as the legal issues and factual situation which that case presented closely parallel those engendered by the ordinances this Court must now scrutinize.

With regard to *Central Hudson's* threshold factor, just as was true in *Metromedia*, there has been no suggestion in the instant case that the form of commercial advertising for which plaintiff seeks constitutional protection involves unlawful activity or is in any way misleading. *See Metromedia*, 453 U.S. at 507, 101 S.Ct. at 2892. Plaintiff's speech interest is therefore entitled to First Amendment protection and only may be circumscribed if defendants can satisfy

each of the remaining three criteria of *Central Hudson. Id.*

■ As to the second element of *Central Hudson,* defendants Babylon, Hempstead, Lindenhurst, and Oyster Bay have failed to satisfy constitutional requirements. The second *Central Hudson* criterion dictates that there must be a substantial governmental interest asserted to support the restriction on constitutionally protected commercial speech. 447 U.S. at 566, 100 S.Ct. at 2351. A mere cursory examination of each of these defendants' ordinances reveals a complete absence of any stated purpose to support their respective bans on offsite commercial advertising.

Moreover, at the hearing that the Court held on plaintiff's motion for a preliminary injunction, these defendants failed to offer any evidence as to the objectives that might underlie the ordinances they had enacted. Similarly, after the Court gave the parties notice that it was converting the preliminary injunction motion into a motion for summary judgment and allowed the parties to submit additional material in connection with the converted motion, these defendants did not offer any evidence, by way of affidavit or otherwise, that would indicate the motives that lead to the promulgation of the respective ordinances. Certain of these defendants stated in briefs filed in opposition to plaintiff's initial preliminary injunction motion that the purpose of their ordinances is to promote safety and aesthetics. Mere assertions in a memorandum of law, otherwise unsubstantiated in the record, are, however, insufficient to satisfy the second requisite element of *Central Hudson* and overcome summary judgment. *See Weiss v. Feigenbaum,* 558 F.Supp. 265, 269 n. 1 (E.D.N.Y.1982); *United States v. Malkin,* 317 F.Supp. 612, 614 n. 6 (E.D.N.Y.1970).

In the absence of any evidence demonstrating the purposes intended to be served by the ordinances these defendants have enacted, this Court is unable to assess whether the ordinances do in fact "implement a substantial governmental interest," *Metromedia,* 453 U.S. at 507, 101 S.Ct. at 2892, and therefore is constrained to hold that the ordinances fail to pass constitutional muster. *See Dills v. City of Marietta,* 674 F.2d 1377, 1381 (5th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983); *Rhodes v. Gwinnett County,* 557 F.Supp. 30, 32–33 (N.D.Ga. 1982). Of course, Babylon, Hempstead, Lindenhurst, and Oyster Bay are free to amend their respective ordinances in an effort to satisfy constitutional requirements.

■ The ordinances of defendants Freeport and Islip, on the other hand, do delineate the purposes for which their ordinances were enacted. The Freeport ordinance, for example, lists the enhancement of Freeport's "physical appearance and environment" and the reduction of traffic accidents as two of its goals.[3] Likewise, Islip's ordinance lists among its stated purposes the improvement of "the aesthetic environment of the town" and the reduction of "motorist distraction".[4] The Su-

---

**3.** The Freeport Code states in pertinent part:
The purpose of this Article is to regulate existing and proposed signs in order to:
  A. Protect property values.
  B. Create a more attractive economic business climate.
  C. Enhance and protect Freeport's physical appearance and environment.
  D. Preserve the scenic and natural beauty of the village.
  E. Provide a more enjoyable and pleasing community.
  F. Reduce sign or advertising distractions and obstructions that may contribute to traffic accidents.
  G. Reduce hazards that may be caused by signs overhanging or projecting over public rights-of-way.

FREEPORT, N.Y., CODE art XXI § 210–202.

**4.** The Islip Code states in pertinent part:
This Article is intended to control outdoor signs of all types and in all zoning districts by regulating size, location, quantity, quality, content and design to:
  A. Protect the safety of the public.
  B. Enhance the aesthetic environment of the town.
  C. Reduce motorist distraction.
  D. Provide for uniform design standards.
  E. Encourage excellence in sign design.
  F. Improve business identification and sign comprehension.
  G. Limit the use of energy in sign design and maintenance.

preme Court in *Metromedia* found that these goals of aesthetics and safety are unequivocally substantial governmental objectives and thus satisfy the second criterion of the *Central Hudson* test. *See* 453 U.S. at 507–08, 101 S.Ct. at 2892–93.

As to the third element of *Central Hudson*, that the regulation must directly advance the asserted interest, the notion expressed in *Metromedia* that judgments concerning the relationship between billboard advertising and traffic safety are " 'intensely local and specialized' " and should not be disturbed unless shown to be "unreasonable" or "palpably false", 453 U.S. at 509, 101 S.Ct. at 2893 (citing *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 109, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949)), is equally applicable to the case now before the Court. Plaintiff has offered no evidence to suggest that Freeport and Islip's legislative judgments concerning traffic safety are unreasonable or false. Likewise, as to Freeport and Islip's judgments regarding the connection between outdoor sign advertising and aesthetics, the *Metromedia* Court observed that "billboards by their very nature, wherever located and however constructed, can be perceived as 'aesthetic harm' " and that, in the absence of proof showing that defendants have an ulterior motive to suppress speech, such expression can constitutionally be regulated. 453 U.S. at 510, 101 S.Ct. at 2893–94. Plaintiff in the instant case has not demonstrated any such ulterior motive. Accordingly, the Court finds that Freeport and Islip's respective ordinances directly advance the interests stated therein and thus meet *Central Hudson's* third requirement.

Finally, with respect to the fourth factor in the *Central Hudson* test—namely, that the regulation must not be broader than necessary to achieve its stated objectives— this Court holds that Freeport and Islip's

ordinances are reasonable and are not more extensive than is required to sustain their asserted interests. As the Court in *Metromedia* opined, "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends." 453 U.S. 508, 101 S.Ct. at 2893. Here, defendants' judgments concerning outdoor advertising and its effect on traffic safety and aesthetics are rational and reasonably tailored to achieve their valid purposes.

In conclusion, this Court holds that the portions of the ordinances of defendants Babylon, Hempstead, Lindenhurst, and Oyster Bay that plaintiff has challenged in this action, namely, those requiring that outdoor signage be limited to on-premises advertising, must be struck down as unconstitutional because these defendants have not put before the Court any evidence indicating the purposes underlying these restrictions and thus have failed to satisfy an essential element of the *Central Hudson* test. The ordinances of defendants Freeport and Islip, on the other hand, meet each of the four aspects of the *Central Hudson* test and therefore fulfill constitutional requirements with respect to their effect on commercial speech.

## IMPACT ON
## NON–COMMERCIAL SPEECH

Turning to the ordinances' impact on non-commercial speech[5], this Court notes that, as the *Metromedia* plurality made clear, while the constitutionality of a sign ordinance will not be impaired by its preference for one type of commercial speech over another, an ordinance will not pass constitutional muster if it favors any type

---

H. Amortize and replace signs which do not conform to the provisions of this Article.
ISLIP, N.Y., CODE art. XXIX § 68–394.

5. Although, having found the challenged portions of the ordinances of Babylon, Hempstead, Lindenhurst, and Oyster Bay to be unconstitutional on the basis of their effect on commercial

speech, the Court is not required to reach the question of whether the ordinances are unconstitutional because of their impact on non-commercial speech, the Court believes that it is prudent to include these ordinances in its discussion of constitutional issues which the regulation of non-commercial signage raises.

of commercial speech over non-commercial speech. 453 U.S. at 513, 101 S.Ct. at 2895. *See also Jackson v. City Council of Charlottesville,* 659 F.Supp. 470, 473 (W.D.Va. 1987), *modified on other grounds,* 840 F.2d 10 (4th Cir.1988); *Matthews v. Town of Needham,* 596 F.Supp. 932, 935 (D.C. Mass.1984), *aff'd,* 764 F.2d 58 (1st Cir. 1985). The Supreme Court struck down the portion of San Diego's ordinance which permitted commercial entities to erect and maintain signs advertising the services or goods related to the sign's location but at the same time prohibited entities from communicating through the use of an otherwise identical sign non-commercial messages unconnected to the business being conducted on the premises. The plurality held that, "Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." *Id.*

▉ In addition to the ordinance's infirmity in according greater protection to commercial speech than to traditionally higher valued non-commercial speech, San Diego's ordinance improperly preferred certain types of non-commercial speech over other non-commercial speech. 453 U.S. at 514–15, 101 S.Ct. at 2896. San Diego's prohibition on signs contained exceptions for, among other things, religious symbols, temporary political signs, and signs displaying news items. 453 U.S. at 514, 101 S.Ct. at 2896. The Court held that San Diego could not choose on the basis of content which non-commercial signs would be permitted and which would be disallowed, for " '[t]o allow a government the

choice of permissible subjects for public debate would be to allow government control over the search for political truth.' " *Id.* (quoting *Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 538, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980)). In sum, in order to pass constitutional muster, a sign ordinance, to the extent that it regulates non-commercial speech, may neither regulate such speech more stringently than it does commercial speech nor demonstrate a preference for the subject matter of certain non-commercial speech over other non-commercial speech.

Applying these basic principles to the six ordinances at issue in the present case, this Court finds that each ordinance contains certain provisions which are violative of the First Amendment guarantee of free speech.

▉ The Babylon Code provides that ground signs "shall only be permitted on a plot of ground on which a business or industry is conducted and only as an accessory thereto" and that "[s]uch sign[s] shall only advertise the name of the business conducted on the premises or its trademark, product or service offered." BABYLON, N.Y., CODE art. XIX § 213–253(g)(1) & (2). In addition, the Babylon Code permits signs to "indicate only the name or names of the establishment, occupants, the principal products or services available on the premises and the address." *Id.* at § 213–255(C)(1). Therefore, the only type of ground signs allowed under the Babylon Code are those which advertise a product or service offered by a business or industry located at the premises on which the sign is erected, *i.e.,* on-premise commercial signs. The Babylon Code in this respect closely parallels the portion of the San Diego ordinance struck down by the Supreme Court in *Metromedia.*[6] Just as was true of San

---

**6.** The challenged ordinance in *Metromedia* read as follows:

"B. OFF–PREMISE OUTDOOR ADVERTISING DISPLAY SIGNS PROHIBITED

"Only those outdoor advertising display signs, hereinafter referred to as signs in this Division, which are either signs designating the name of the owner or occupant of the premises upon which such signs are placed,

or identifying such premises; or signs advertising goods manufactured or produced or services rendered on the premises upon which such signs are placed shall not be permitted. The following signs shall be prohibited:

"1. Any sign identifying a use, facility or service which is not located on the premises.

Diego in *Metromedia*, Babylon's preference for on-premises commercial signs inverts the constitutionally mandated hierarchy that elevates non-commercial speech over commercial speech and thus contravenes the rudimentary values of the First Amendment.

Similarly, Freeport's Code contains a provision which reads, in pertinent part, "Only accessory signs shall be permitted. Nonaccessory signs shall be prohibited." FREE-PORT, N.Y., CODE art. XXI § 210–209. The Freeport Code defines an accessory sign as "[a]ny sign related to a residence, business or profession conducted, or to a commodity or service sold or offered, lawfully existing upon the premises where such sign is located." *Id.* at § 210–204. A nonaccessory sign is defined as "[a]ny sign unrelated to a business or profession conducted, or to a commodity or service sold or offered, upon the premises where such sign is located". *Id.* In addition, the Freeport Code provides that "[i]nformation displayed on signs shall be limited to the name, address and nature of the business and products available or activity for which the building or premises is used." *Id.* at § 210–211. Therefore, Freeport too permits only signs which relate to a commercial enterprise existing upon the same location as the sign. Thus, to the extent that it favors on-premises commercial speech over non-commercial speech, Freeport's sign ordinance violates the First Amendment.

Each of the remaining ordinances contains similar language which likewise has the effect of unconstitutionally preferring commercial speech to non-commercial speech. Lindenhurst's Code provides that a detached or ground sign "shall advertise only the business conducted on the premises on which it is placed ..." and permits wall signs "advertising only the business conducted in the building...." LINDEN-HURST, N.Y., CODE § 67–4. Oyster Bay

allows wall signs "advertising only the business and produce or services sold within" the building to which the sign is affixed. OYSTER BAY, N.Y., CODE § 128(a). Hempstead's Code provides that "detached signs shall be permitted and shall advertise only the business, products or services provided on the premises" and that "wall signs shall be permitted for each tenant space advertising only the business conducted in each tenant space." HEMP-STEAD, N.Y., CODE art. XXIV § 244(F)(2)(a) & (b). Hempstead's sign ordinance also permits window signs, which it defines, in pertinent part, as a sign "used for advertisement, announcement, or notice, directional matter, company name or tradename which is relative to the business, products or services provided." *Id.* at § 243. Finally, the Islip Code provides that "Permitted signs may only identify the person, establishment, the principle [sic] product and or services available on the premises which contain the sign." ISLIP, N.Y., CODE art XXIX § 68–395(A).

In addition to the exception for on-premises commercial speech that each ordinance contains, several of the challenged ordinances also include other exceptions to their general bans on signs. For example, Freeport, Islip, Oyster Bay, Lindenhurst, and Hempstead permit the erection of signs indicating that real property is for sale or lease. FREEPORT, N.Y., CODE art. XXI § 210–208(J); ISLIP, N.Y., CODE art. XXIX § 68–395(B)(6); OYSTER BAY, N.Y., CODE § 126(d); LINDENHURST, N.Y., CODE § 67–3(B); HEMPSTEAD, N.Y., CODE art. XXIV § 244(c). Such exceptions are content-based and give preference to commercial real estate signs over signs carrying non-commercial messages. Therefore, to the extent that such provisions afford greater protection to real estate-related speech than to non-commercial speech, they are violative of the First

---

"2. Any sign identifying a product which is not produced, sold or manufactured on the premises.

"3. Any sign which advertises or otherwise directs attention to a product, service or activity, event, person, institution or business which may or may not be identified by a

brand name and which occurs or is generally conducted, sold, manufactured, produced or offered elsewhere than on the premises where such sign is located."

*Metromedia*, 453 U.S. at 493 n. 1, 101 S.Ct. at 2885 n. 1 (quoting San Diego Ordinance No. 10795 (New Series), enacted March 14, 1972).

Amendment. Insofar as the defendant towns and villages permit exceptions for specific types of commercial speech, they must provide equal or greater opportunity for the expression of non-commercial speech.

▇ Several of the challenged ordinances also create exceptions to their general bans on non-commercial speech which discriminate in favor of certain types of non-commercial speech and against other types of non-commercial speech. Babylon, Oyster Bay, and Islip each provide an exception to their bans on non-commercial speech for temporary political signs which are connected with political campaigns. BABYLON, N.Y., CODE art. XIX § 213–255(A); OYSTER BAY, N.Y., CODE § 135; ISLIP, N.Y., CODE art. XXIX § 68–395(16). By excepting only a temporary political sign from the ban on non-commercial speech, a town is making a value-based judgment that saying "vote for X" at election time is more important than saying for example "save the whales" at various times throughout the year. Legislation enacted to reflect such a determination is not constitutionally sound. Babylon also excepts from its ban temporary signs advertising "annual or semiannual event[s] of a nonprofit organization. BABYLON, N.Y., CODE art. XIX § 213–253(Q)(1). Similarly, Oyster Bay makes allowances for "one [temporary] illuminated announcement sign ... when erected or maintained by a public or semi-public agency, eleemosynary organization or permitted club". OYSTER BAY, N.Y., CODE § 127(c). Islip creates an exception for signs "identifying a grand opening, parade, festival, fund drive or similar occasion." ISLIP, N.Y., CODE art. XIX § 68–395(B)(13). Granting an exception for temporary signage only when erected by such entities as semi-public agencies, nonprofit organizations, or "permitted clubs", or only in connection with limited and vaguely defined events, shows an impermissible favoritism for certain types of non-commercial speech and certain types of speakers and, additionally, leaves open the door to abuse of discretion in determinations of who qualifies for the exception.

▇ The Court recognizes that the imposition of reasonable time, place, and manner restrictions upon the expression of non-commercial speech is constitutionally acceptable and undoubtedly necessary. *See Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 *reh'g denied*, 441 U.S. 97, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979). Such limitations placed upon the erection and maintenance of non-commercial signage are valid to the extent that they are content neutral. *See e.g., Lindsay v. City of San Antonio*, 821 F.2d 1103 (5th Cir. 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988); *Candidates' Outdoor Graphic Serv. v. City and County of San Francisco*, 574 F.Supp. 1240 (N.D.Cal.1983). The ordinances challenged in this action indeed carry many content-neutral provisions regulating, *inter alia,* the permissible range of sign sizes, the size and type of lettering which may be used, illumination, the design of sign structures, where signs may be placed, and the quantity of signs per parcel of land. *See e.g.,* BABYLON, N.Y., CODE art. XIX § 213–253(E)(2)(a)–(1); FREEPORT, N.Y., CODE art. XXI § 210–206(A)–(M); LINDENHURST, N.Y., CODE § 67–5(A) & (B); OYSTER BAY, N.Y., CODE § 128(b) & (c); ISLIP, N.Y., CODE art XXIX § 68–400(A)–(C); HEMPSTEAD N.Y., CODE art. XXIV § 246(B) & (C). Such content-neutral provisions were not the object of plaintiff's challenge and are certainly within the scope of the towns' and villages' legislative police power.

▇ Several of the defendants argued that the portions of their respective ordinances which allow only signs advertising the business conducted on the premises are merely content-neutral time, place, and manner restrictions. This Court squarely rejects this contention. In addition to directly contradicting the plurality's opinion in *Metromedia,* this line of reasoning is internally flawed. By their own terms, the ordinances regulate according to the subject matter of the sign, *i.e.,* only a message concerning the business of that location is allowed. Therefore, under the ordinances

as they exist, "Joe", for example, may put up a sign on his pizzeria saying "Joe's Famous Pizza" but may not put up a sign in the same spot, of the same size, using identical lettering and colors, expressing his view that "abortion is murder." Nor may he lease this same sign to "Bill" to publicize his message that "free choice is the only choice". Thus, whether the sign is permitted depends solely upon the content of the message being conveyed.

■ It is important to note that this Court, by its decision, is not pronouncing a positive mandate that plaintiff may erect the desired billboards which prompted it to commence this action. Moreover, the Court is not striking in its entirety the language of the respective ordinances that it has found to be unconstitutional in its effect on non-commercial speech.[7] Instead, in an effort narrowly to tailor constitutionally based injunctive relief, this Court holds only that the defendant towns and villages may not enforce in a manner that disadvantages any type of non-commercial speech the constitutionally offensive language which favors commercial speech above non-commercial speech and prefers the subject matter of certain non-commercial speech above other non-commercial speech.

■ Furthermore, this Court's holding in no way forecloses defendants from promulgating and enforcing sign regulations in order to achieve greater aesthetics and safety. A municipality need not do away with all sign restrictions in order to stay within constitutional boundaries. In fact, a municipality may still favor on-premises commercial speech above off-premises commercial speech without running afoul of the First Amendment. In *Major Media of the Southeast v. City of Raleigh*, 792 F.2d 1269 (4th Cir.1986), *cert. denied*, 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987), the Fourth Circuit had occasion to examine a sign ordinance much like both the ordinance in *Metromedia* and those being challenged here. The Raleigh ordinance differed from that of *Metromedia* and those

now at issue in one critical respect. It contained the provision that "[a]ny sign authorized in this chapter is allowed to contain non-commercial copy in lieu of any other copy." *Major Media*, 792 F.2d at 1271. The Fourth Circuit upheld the ordinance against a First Amendment challenge, finding that it did not improperly serve to protect commercial speech to a greater extent than non-commercial speech. *Major Media*, 792 F.2d at 1271. *See also Georgia Outdoor Advertising v. City of Waynesville*, 833 F.2d 43 (4th Cir.1987) (sign ordinance which favored on-premises commercial speech but also allowed non-commercial speech in place of any permitted commercial speech held constitutional).

Enacting a savings clause enables a town to retain control over the number and general appearance of signs that will exist in a given location and to prohibit off-premises commercial speech, as long as the four-point *Central Hudson* test is satisfied, while at the same time ensures that one's right to express non-commercial messages is not abridged. Thus, an amendment which provides for the substitution of non-commercial speech for any permitted copy would allow Joe either to erect a sign advertising "Joe's Famous Pizza", express his view that "abortion is murder", or lease his sign space to Bill for Bill's announcement that "free choice is the only choice", but would still allow the town to prevent Joe from using his sign to say "Product X is the best" or from plastering his property with a multiplicity of signs. Practically, if Joe is allowed to place only one sign on his storefront, his financial interest in identifying his commercial establishment will in all likelihood override his interest in either expressing his personal views or leasing this sign space to another. However, this decision should be a function of economic forces, not of a municipality's belief that commercial messages are more essential than non-commercial messages.

CONCLUSION

For the reasons set forth throughout this opinion, the Court holds that plaintiff has

---

**7.** The Court is, however, as is discussed above, striking for failure to satisfy the *Central Hudson* test those portions of the ordinances of Baby-

lon, Hempstead, Lindenhurst, and Oyster Bay that plaintiff has challenged.

standing to pursue this action and is not required to exhaust administrative procedures, and that The Federal Highway Beautification Act does not prevent plaintiff from seeking relief in this Court. The Court further holds that with respect to the ordinances' impact on commercial speech, Freeport and Islip's ordinances are constitutionally valid and thus may be applied to prohibit plaintiff from erecting off-premises sign displays within those localities. The ordinances of defendants Babylon, Hempstead, Lindenhurst and Oyster Bay do not satisfy constitutional requirements and therefore these towns and villages are hereby enjoined from enforcing those ordinances so as to prevent plaintiff from erecting off-premises sign displays within these towns and villages.

Finally, as to the ordinances' impact on non-commercial speech, various aspects of the respective ordinances, as detailed above, are violative of the First Amendment. The defendant towns and villages are hereby enjoined from allowing exceptions to their general bans on speech for certain specified types of non-commercial speech while not extending such exceptions uniformly to all forms of non-commercial speech. The defendants are further enjoined from limiting the various exceptions to the general bans on the utilization of signs contained in the respective ordinances to specific types of commercial speech (such as on-premises commercial speech or real estate-related speech). Such exceptions must be made, at a minimum, equally available to signage displaying non-commercial speech. In other words, the defendant towns and villages may not utilize their ordinances so as to place restrictions upon the erection of signs containing non-commercial speech which are not also uniformly imposed upon signage which expresses any form of commercial message. Thus, all defendants, including those whose ordinances are constitutional as to their impact on commercial speech, are enjoined from enforcing their sign ordinances to prohibit plaintiff from erecting signs displaying any non-commercial messages at locations where on-premises commercial signage is tolerated.

Accordingly, Clerk of the Court is directed to enter judgment enjoining the defendants from enforcing their sign ordinances in an unconstitutional manner, as detailed in this Memorandum and Order.

SO ORDERED.