**NATIONAL ADVERTISING COMPANY, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**TOWN OF BABYLON, Incorporated Village of Lindenhurst, Town of Brookhaven, Incorporated Village of Freeport, Town of Oyster Bay, Town of Islip and Town of Hempstead, Defendants,**

**Town of Oyster Bay, Town of Babylon, Town of Hempstead, Town of Islip, Defendants–Appellants–Cross–Appellees,**

**and**

**Incorporated Village of Freeport, Defendant–Cross–Appellee.**

Nos. 432, 433 and 246–248,
Dockets 89–7144, 89–7192, 89–7248, 89–7480 and 89–7506.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1989.

Decided April 3, 1990.

Robert W. Schmidt, Oyster Bay Town Atty. (Kenneth A. Davis, Oyster Bay, N.Y., of counsel), for defendant-appellant-cross-appellee, Town of Oyster Bay.

Thomas F. Whalen, Babylon Town Atty. (Neil Tiger, Lindenhurst, N.Y., of counsel), for defendant-appellant-cross-appellee Town of Babylon.

Lawrence L. Friedman, Hempstead, N.Y. (Ronald J. Levinson, Hempstead Town Atty., of counsel), for defendant-appellant-cross-appellee, Town of Hempstead.

Lawrence Donohue, Islip, N.Y. (Robert J. Cimino, Islip Town Atty., of counsel), for defendant-appellant-cross-appellee, Town of Islip.

William F. Glacken, Freeport, N.Y., for defendant-cross-appellee, Inc. Village of Freeport.

Myron D. Cohen, New York City (Christopher M. Mason, Michael R. Shebelskie, Hunton & Williams, of counsel), for plaintiff-appellee-cross-appellant.

Before OAKES, Chief Judge, and KEARSE and ALTIMARI, Circuit Judges.

OAKES, Chief Judge:

These appeals and cross-appeal, involving five municipal billboard ordinances, are from a judgment of the United States District Court for the Eastern District of New York, Leonard D. Wexler, Judge, reported at 703 F.Supp. 228 (E.D.N.Y.1989). The Towns of Babylon, Hempstead and Oyster Bay appeal from Judge Wexler's decision insofar as it struck down their ordinances in their entirety as unconstitutional restrictions on commercial speech. The Town of Islip appeals from the decision insofar as it struck down part of its ordinance as an unconstitutional restriction on noncommercial speech. The National Advertising Company ("National") cross-appeals from the decision insofar as it severed unconstitutional provisions of the ordinances of Islip and the Incorporated Village of Freeport and saved the remainder. We affirm the judgment to the extent that it struck down the ordinances of Babylon and Hempstead; we reverse the judgment to the extent that it upheld portions of the ordinances of Freeport and Islip; and we dismiss the appeal of Oyster Bay.

## BACKGROUND

National, a subsidiary of Minnesota Mining and Manufacturing Company, is engaged in the business of outdoor advertising and commands a market share of approximately twenty percent of the billion-dollar billboard industry in the United States. It leases real estate upon which it erects and maintains billboards and in turn leases space on the billboards to persons or entities wishing to communicate messages to the viewing public. Ninety-eight percent of the billboards National leases are commercial in nature, while the remaining two percent convey noncommercial messages.

National has obtained leasehold interests on sites on which it intends to erect billboards in each of the Long Island municipalities that are parties to this action. Each of those sites is in an area zoned for commercial or industrial use. The proposed billboards would carry both commercial and noncommercial messages that would be unrelated to the products sold or activities conducted at the locations; in other words, the signs would contain off-premises, as opposed to on-premises, advertising.

In analyzing the constitutionality of the ordinances, the district court first applied the four-part test for determining the validity of governmental regulations on commercial speech that was set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563–66, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980), and later summarized in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981) (plurality opinion):

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

703 F.Supp. at 233 (quoting *Metromedia*). After finding that there is no suggestion that the advertising for which National seeks constitutional protection involves unlawful activity or is misleading, *see id.* at 234, the district court found that the Babylon, Hempstead and Oyster Bay sign ordinances fail to satisfy the second element of the test in that there is "a complete absence of any stated purpose to support their respective bans on offsite commercial advertising." *Id.* at 235. In addition, those towns "failed to offer any evidence as to the objectives that might underlie the

ordinances." *Id.* Accordingly, the court struck down their sign ordinances. By contrast, the court noted that the Freeport and Islip ordinances properly cite as their goals the enhancement of aesthetics and the improvement of traffic safety, *cf. Metromedia*, 453 U.S. at 507–08, 101 S.Ct. at 2892–93 ("traffic safety and the appearance of the city ... are substantial governmental goals"), and found that those ordinances satisfy all the elements of the *Central Hudson* test. *See* 703 F.Supp. at 236.

Turning to the ordinances' impact on noncommercial speech, the court noted that the *Metromedia* plurality had held that an ordinance cannot pass constitutional muster if it favors any type of commercial speech over noncommercial speech. *See id.* at 236–37 (citing *Metromedia*, 453 U.S. at 513, 101 S.Ct. at 2895). The district court found that, contrary to that requirement, the Freeport and Islip ordinances effectively limit the content of a sign to a business's name and basic information concerning the nature of its business.[1] For instance, as Islip has conceded in its reply brief to this court, under its ordinance " 'Joe's Famous Pizza' ... could not install a sign say[ing] 'Abortion is Murder.' " The district court concluded that the Freeport and Islip ordinances unconstitutionally prohibit noncommercial speech. *See* 703 F.Supp. at 238.

The district court also found that certain exceptions to Islip's general ban on signs impermissibly prefer commercial over noncommercial speech, such as a provision permitting signs indicating that real property is for sale or lease, and that other exceptions impermissibly favor certain forms of noncommercial speech, such as temporary political signs and signs "identifying a grand opening, parade, festival, fund drive or similar occasion," over other forms of noncommercial speech based on their content. *See id.* at 238–39 (citing Islip, N.Y., Code art. XXIX § 68–395(B)(6), (13) & (16)). The court found that the Freeport ordinance contains a similar impermissible exception for "for sale" signs. *See id.* at 238 (citing Freeport, N.Y., Code art. XXI § 210–208(J)).

■ Although the court found that aspects of the Freeport and Islip ordinances violate First Amendment guarantees, it stopped short of striking down the ordinances in their entirety. Instead, the district court enjoined Freeport and Islip from enforcing their ordinances so as to disadvantage noncommercial speech as against commercial speech, or to disadvantage certain forms of noncommercial speech as against other forms of noncommercial speech. *See id.* at 240. The effect of the district court's remedy was to sever the unconstitutional portions of the ordinances and to leave the remainder of the ordinances intact. In so doing, the district court restructured the Freeport and Islip ordinances along the lines of ordinances found constitutional by the Fourth Circuit in *Major Media of the Southeast v. City of Raleigh*, 792 F.2d 1269, 1271–72 (4th Cir. 1986), *cert. denied*, 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987), and *Georgia Outdoor Advertising v. City of Waynesville*, 833 F.2d 43 (4th Cir.1987), both of which upheld under *Metromedia* municipal ordinances that allowed any authorized sign "to contain non-commercial copy in lieu of any other copy."[2]

---

1. The Freeport ordinance permits only "accessory signs" to be displayed. Freeport, N.Y., Code art. XXI § 210–209(A). An accessory sign is defined as "[a]ny sign related to a residence, business or profession conducted, or to a commodity or service sold or offered, lawfully existing upon the premises where such sign is located." *Id.* at § 210–204.

    The Islip ordinance states: "Permitted signs may only identify the person, establishment, the principle [sic] product and/or service available on the premises which contains [sic] the sign." Islip, N.Y., Code art. XXIX § 68–395(A).

2. The district court also noted that all the municipalities were free to amend their ordinances in an effort to satisfy constitutional requirements. *See* 703 F.Supp. at 235, 240. Although several have informed this court that they have since done so, that fact does not render this appeal moot. As the Supreme Court has observed, a voluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–89 & n. 10, 102 S.Ct. 1070, 1074–75 & n. 10, 71 L.Ed.2d 152 (1982). In addition, this appeal is not moot

## DISCUSSION

█ In the first place, we dismiss Oyster Bay's appeal because its notice of appeal was filed while Hempstead's motion to vacate the district court's judgment pursuant to Federal Rule of Civil Procedure 59 was pending in the district court. Under Federal Rule of Appellate Procedure 4(a)(4), a notice of appeal filed during the pendency of a Rule 59 motion is ineffective. *See Acosta v. Louisiana Dep't of Health and Human Resources*, 478 U.S. 251, 106 S.Ct. 2876, 92 L.Ed.2d 192 (1986) (per curiam). Because Oyster Bay did not file a proper notice of appeal after the district court denied the Rule 59 motion, it did not submit effective notice of appeal under Federal Rule of Appellate Procedure 4(a)(1).

█ As to a preliminary issue raised by the remaining appellants, we have no doubt that the district court was correct in holding that, because of its commercial interest in the speech appellants seek to restrict, National has standing to challenge the ordinances, just as Metromedia had standing in its lawsuit against San Diego. *See Metromedia*, 453 U.S. at 504 & n. 11, 101 S.Ct. at 2890 & n. 11. Similarly, National was not required to exhaust administrative remedies since it challenged the ordinances as facially invalid. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969) (" 'The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands.' ") (citation omitted).

### Appeals

Appellants argue that a municipality may ban off-premises commercial billboard advertising and may discriminate between off-premises and on-premises commercial advertising. They cite *Board of Trustees v. Fox*, — U.S. ——, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), for the proposition that *Metromedia* upheld San Diego's complete ban of off-premises billboard advertising without any inquiry as to whether any less restrictive measure would suffice. They

also refer us to *Raleigh, supra,* and *Waynesville, supra,* as support for an outright ban on off-premises advertising. We have difficulty reading these cases to support the propositions claimed by the appellants. To us, this case is really quite simple. Appellants' challenged ordinances are unconstitutional because they fail to follow basic constitutional dictates concerning a municipality's ability to restrict speech.

### A. Babylon and Hempstead

█ It is a well-established rule that where legislation restricts speech, even commercial speech, the party seeking to uphold the restriction carries the burden of justifying it. *See Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 2882 n. 20, 77 L.Ed.2d 469 (1983). The ordinances of Babylon and Hempstead impermissibly restrain commercial speech because they contain no statement of a substantial governmental interest and the towns offered no extrinsic evidence of such an interest.

Even though one might assume that the towns were interested in traffic safety and aesthetics, the ordinances include no such statement of purpose. True, the preamble to another part of the Babylon zoning code states that the code generally was adopted for the promotion of health, safety, morals, comfort, convenience and the general welfare, and a subsection of the sign ordinance provides that certain exceptions to the ordinance may take aesthetics into account. *See* Babylon, N.Y., Code §§ 213–2 & –254. In Hempstead, one prohibition on sign placements forbids the obstruction of traffic and the creation of a hazard to the health and welfare of the general public, and a provision for variances explicitly requires consideration of aesthetics, light, air and the health and welfare of the public. *See* Hempstead, N.Y., Code §§ 246(B) & 242(B)(4). However, these provisions do not provide the rationale for the enactment of the sign ordinances themselves.

We have been unable to find any case where a court has taken judicial notice of

because National might have secured some vest-    ed rights under state law in the interim.

an unstated and unexplained legislative purpose for an ordinance that restricts speech. *See, e.g., Bell v. Township of Stafford,* 110 N.J. 384, 398, 541 A.2d 692, 700 (1988) ("In view of Stafford's failure to justify the passage of such a broad and encompassing ordinance that substantially curtails freedom of speech and expression, we are constrained to declare it facially unconstitutional."). At most, courts have taken judicial notice of a common-sense linkage between a stated governmental interest and a restriction in order to assess whether the third part of the *Central Hudson* test—that a restriction directly advance the governmental interest asserted—has been satisfied. *See, e.g., Dunagin v. City of Oxford,* 718 F.2d 738, 748 n. 8 (5th Cir.1983) (en banc) ("the decision on whether a regulation of commercial speech directly advances the state's interest ... is an exercise of constitutional adjudication wherein appellate courts play a special role"), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984).

While acknowledging that substantial governmental interests exist in the promotion of aesthetics and traffic safety, the Eleventh Circuit in *Dills v. City of Marietta,* 674 F.2d 1377 (11th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983), declined to impute an interest in aesthetics to a regulation on portable signs that stated that its purpose was "to safeguard life, public health, property and welfare." *See* 674 F.2d at 1381. The court held that with such an all-inclusive statement of purpose it was forced to examine the record for evidence of the interest underlying the measure, and refused to accept counsel's "mere incantation of aesthetics as a proper state purpose." *Id.* The court noted that "[s]uch broad, all encompassing statements tend to frustrate judicial inquiry into the real purposes of a governmental entity in instituting a restriction on protected activity." *Id.* Although the Eleventh Circuit accepted the traffic

safety rationale, *id.,* it based that finding on a narrow reading of the ordinance's own statement of purpose as well as on the portable sign regulation's obvious aim of promoting traffic safety, factors that are not present here.

Because the Babylon and Hempstead sign ordinances do not identify the particular governmental interests sought to be advanced and the towns failed to introduce any extrinsic evidence of the interests underlying the ordinances, we agree with the district court's finding that the ordinances are unconstitutional.

#### B. Islip

■ Although the district court found that the ordinances of all appellants unconstitutionally discriminate against noncommercial speech, we consider in this context only Islip's ordinance. Because we strike down the Babylon and Hempstead ordinances as unconstitutional restrictions on commercial speech, we need not consider their effect upon noncommercial speech.[3]

As to Islip's ordinance, we agree with the district court that it is defective because it impermissibly discriminates against noncommercial speech in favor of commercial speech. As the *Metromedia* plurality held:

Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

453 U.S. at 513, 101 S.Ct. at 2895. After *Metromedia* struck down San Diego's ordinance as granting more protection to commercial than noncommercial speech, municipalities responded by adding provisions to their sign ordinances to overcome this defect by permitting noncommercial mes-

---

**3.** As the district court noted, its discussion of the effect of those ordinances on noncommercial speech was dicta. *See* 703 F.Supp. at 236 n. 5. Nonetheless, Babylon and Hempstead are advised to give strong consideration to the dis-

trict court's reasoning, as well as to our ruling today regarding the constitutionality of the Islip ordinance's restrictions upon noncommercial speech, if they choose to redraft their ordinances.

sages wherever commercial messages were allowed. *See, e.g., Waynesville,* 833 F.2d at 46 (" 'Any sign authorized in this ordinance is allowed to contain noncommercial copy in lieu of other copy.' "); *Raleigh,* 792 F.2d at 1271 (virtually identical provision). Not so Islip. Although it would have been a simple matter to draft such a provision, Islip's ordinance has none. Accordingly, we agree with the district court that Islip's sign ordinance, like that of San Diego a decade ago, violates the First Amendment.

The district court properly followed *Metromedia* in concluding that the exceptions to the ban for temporary political signs and for signs identifying a grand opening, parade, festival, fund drive or other similar occasion impermissibly discriminate between types of noncommercial speech based on content. *See Metromedia,* 453 U.S. at 515, 101 S.Ct. at 2896 ("With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse ..."). We find, however, that the town properly provided for an exemption from the ban for signs indicating that real property is for sale or lease. Rather than being an unconstitutional content-based preference for commercial speech over noncommercial speech, that exemption is appropriate following the Supreme Court's decision in *Linmark Associates v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), which struck down on First Amendment grounds content-based restrictions upon the posting of "for sale" or "sold" signs.

### Cross–Appeal

█ In the cross-appeal National challenges the fact that the district court struck down portions of the Freeport and Islip ordinances that it found unconstitutional and, in spite of the fact that they did not contain severability clauses, saved the remainder. The court accomplished this by structuring its injunctive relief so that the

ordinances effectively would contain provisions like those found in *Raleigh, supra,* and *Waynesville, supra,* permitting noncommercial copy to appear on signs wherever commercial copy is allowed. The district court explained this decision by stating that it made "an effort narrowly to tailor constitutionally based injunctive relief." 703 F.Supp. at 240. Finding the ordinances to be nonseverable, we strike them down in their entirety.

Since the overbreadth challenge was successful, the Freeport and Islip ordinances are invalid in all their applications. *See Board of Trustees v. Fox,* 109 S.Ct. at 3036. In the absence of severability clauses,[4] the burden is on the towns to show that the unconstitutional provisions are severable. *See Carter v. Carter Coal Co.,* 298 U.S. 238, 312, 56 S.Ct. 855, 873, 80 L.Ed. 1160 (1936). The critical issue is whether the legislation would have been enacted if it had not included the unconstitutional provisions. *See United States v. Jackson,* 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138 (1968); *Carter Coal,* 298 U.S. at 312–13, 56 S.Ct. at 873–74. Islip failed to address this issue at all, and Freeport's assertion that it *can* enforce its ordinance in a constitutional manner is not relevant to the issue of whether it would have enacted the ordinance in the manner proposed by the district court. Inasmuch as Freeport itself recognizes that its ordinance "is a comprehensive regulatory scheme intended to regulate many different forms of commercial and noncommercial speech," we find the constitutional and unconstitutional provisions to be inextricably interwoven, lending further support to the presumption of nonseverability. *See Carter Coal,* 298 U.S. at 313, 56 S.Ct. at 873–74. The district court had to rewrite the Freeport and Islip ordinances substantially in order to save them, a practice which is decidedly disfavored. *See Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 764–65, 106 S.Ct. 2169, 2180–81, 90

---

**4.** In spite of the 180–degree turn Freeport took    at oral argument, we find that its sign ordinance

L.Ed.2d 779 (1986).[5]

Judgment in accordance with opinion with costs to appellee.

does not contain a severability provision.

**5.** Following the Supreme Court's remand in *Metromedia,* the California Supreme Court reached the same result we reach here. Faced with a San Diego ordinance that had been declared unconstitutional for virtually the same reasons as the Freeport and Islip ordinances, the court held that the unconstitutional provisions were not severable in spite of the fact that the San Diego ordinance, unlike the Freeport and Islip ordinances, contained a severability clause. *See Metromedia, Inc. v. City of San Diego,* 32 Cal.3d 180, 649 P.2d 902, 185 Cal.Rptr. 260 (1982).