**Steven L. ABEL, Plaintiff,**

v.

**TOWN OF ORANGETOWN, Defendant.**

**No. 89 Civ. 7073 (GLG).**

United States District Court, S.D. New York.

March 25, 1991.

Steven L. Abel, plaintiff, pro se of Bernard, Brustein & Abel, P.C., New York City.

Law Offices of Alan I. Lamer, Elmsford, N.Y. (Alan I. Lamer, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

Within the zoning code of the Town of Orangetown is a provision which reads as follows: "No sign other than signs placed by agencies of the government shall be placed on any public property unless written consent is first obtained from the Orangetown Town Board." Zoning Code of the Town of Orangetown, § 4.28(c).[1] Plaintiff Steven Abel was a candidate for the position of Town Justice in Orangetown in the November 7, 1989 election. Two months prior to the election, he began placing political signs alongside the public streets in the Town of Orangetown on the unpaved portion of the public right of way. These signs were similar to small billboards in that they were free-standing and not posted on trees or telephone poles. Some of these signs were removed pursuant to authority conferred on the Town Highway Department by the zoning code.

After the signs were removed, Abel applied to the Orangetown Town Board for permission to post his signs. His request was denied without explanation on October 10, 1989.

---

1. Subsections (d), (e) and (f) of this section permit, without prior approval, the posting of temporary signs on private property in connec-

tion with the construction, occupancy, sale and rental of real estate. This action concerns the posting of signs on public property only.

Plaintiff then filed suit which, *inter alia,* challenged the constitutionality of § 4.28(c) of the Orangetown Zoning Code, alleging that this ordinance violated rights of free speech protected by the first amendment.[2] He subsequently moved to enjoin the defendants from removing his political signs. After a two day evidentiary hearing, a temporary restraining order against the Town was lifted by our decision denying the preliminary injunction on the grounds that the plaintiff had not demonstrated a likelihood of success on the merits. *Abel v. Town of Orangetown,* 724 F.Supp. 232, 234–35 (S.D. N.Y.1989). In particular, this court found that plaintiff had failed to show that the ordinance had been administered in an arbitrary or partial fashion. Moreover, after hearing testimony which indicated that the ordinance had been designed to eliminate visual blight for aesthetic purposes, we held that in the absence of unconstitutional application, an ordinance restricting the posting of signs on the public ways to preserve the aesthetic appeal of the Town was within the bounds of the constitution.

Before us now are cross-motions for summary judgment by plaintiff and the defendant, both seeking declarations as to the constitutionality of § 4.28(c).[3]

## DISCUSSION

■ Political discourse is the foundation of our democracy. As a result, "[t]he First Amendment affords the broadest protection to ... political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Buckley v. Valeo,* 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976) (quoting *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1308–09, 1 L.Ed.2d 1498 (1957)). In bringing his candidacy for Town Justice to the attention of the residents of Orangetown by posting signs

along the right of ways of the town streets, Steven Abel was engaging in an activity protected by the first amendment.

■ Streets and public ways have long been preserved as public fora for the purposes of public assembly and discourse. *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 515–16, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939). Any ordinance which restricts access to public wayfares for the purpose of political speech must be carefully scrutinized to ensure that the restriction is not directed at particular speech. If the ordinance is facially content-neutral as § 4.28(c) appears to be, then the court's task to determine whether the time, place or manner restriction is reasonable. *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Furthermore, to be constitutional, the restriction must be narrowly tailored to serve a significant governmental interest. *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 821, 104 S.Ct. 2118, 2137–38, 80 L.Ed.2d 772 (1984).

■ Plaintiff argues that the restriction imposed by the Orangetown ordinance is unreasonable in that it confers upon the Town Board the absolute power to prohibit speech by the simple denial of a request to post signs upon the public right of ways. In *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), the Supreme Court held "that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional." *Id.* at 150–51, 89 S.Ct. at 938; *accord Staub v. City of Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958).

The ordinance at issue here states that no signs may be placed on public property unless written consent is obtained from the

---

**2.** In Count I of his complaint, plaintiff also alleged that he had been deprived by the defendant, under color of state law, of his first amendment rights in violation of 42 U.S.C. § 1983. Count III requests $5,000 in attorney's fees pursuant to 42 U.S.C. § 1988.

**3.** Plaintiff has also moved for attorneys fees of $5000, as requested in Count III of his complaint. This motion must be denied, however, because plaintiff has not pursued to judgment any of the statutes enumerated in 42 U.S.C. § 1988. In any case, we would not be able to order fees without appropriate documentation.

Orangetown Town Board. Nowhere within the ordinance, nor anywhere else in the Zoning Code, are contained standards by which the Town Board, in the exercise of its discretion, is to be guided.[4] Such discretion must therefore be characterized as unbridled. *See 414 Theater Corp. v. Murphy,* 499 F.2d 1155, 1159 (2d Cir.1974) (total lack of standards governing the issuance, renewal, and revocation of licenses conferred virtually unbridled and absolute power on the licensing commission). On the basis of the holding in *Shuttlesworth,* § 4.28(c) necessarily would be deemed unconstitutional.

However, in contraposition to the analysis and logical outcome *Shuttlesworth* dictates, is the line of inquiry urged by the defendant which focuses on the actual application of the ordinance in question as, they argue, was engaged in by the Supreme Court in both *Shuttlesworth* and in *City Council.* Having determined that a municipality's interest in eliminating visual clutter was a sufficient interest to justify a content-neutral prohibition on posting signs on public property, the Supreme Court in *City Council* referred to the fact that the Los Angeles ordinance had been impartially administered. 466 U.S. at 817, 104 S.Ct. at 2135. Similarly, in *Shuttlesworth,* it was evident that the ordinance had been administered in such a way so as to unconstitutionally deny the right of assembly and opportunity for communication of thought. 394 U.S. at 159, 89 S.Ct. at 943. Applying this methodology to the facts in this case, the necessary outcome is that the statute is constitutional. The record indicates that Abel was the only person ever to apply to place signs on public property. The Town Board's denial, albeit without explanation, does not demonstrate bias in administration.[5] Indeed, there was testimony by the Orangetown highway superintendent that his staff removed all signs without regard to their content.

■ However, the proper approach is to consider both whether unbridled discretion was conferred upon the licensing body by the ordinance in issue and how this discretion was exercised by that same body. In *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Supreme Court listed two characteristics in a licensing statute which would unacceptably implicate first amendment concerns: 1) the licensor's unfettered discretion, coupled with a power of prior restraint which could result in self-censorship, *id.* at 757, 108 S.Ct. at 2143–44, and 2) "the absence of express standards [which would] make[ ] it difficult to distinguish, 'as applied,' between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power," *id.* at 758, 108 S.Ct. at 2144.[6] Unbridled discretion to permit speech vested in an official renders an ordinance suspect. *Shuttlesworth,* 394 U.S. at 150–51, 89 S.Ct. at 938–39; *North Shore Right to Life v. Manhasset Am. Legion,* 452 F.Supp 834, 839 (E.D.N.Y.1978) (declaring informal town practice of granting per-

---

4. Defendant has suggested that standards by which the Town Board is to be guided appear in N.Y. Town Law § 130(7) (McKinney 1987). Careful perusal of that statute reveals no such standards. Instead, the statute authorizes the town board to enact ordinances regulating the use of streets, highways, sidewalks and public places with no mention of what criteria should be used as the basis for the granting of licenses.

5. Abel suggests that this denial was based on the fact he was a Democrat, running to unseat a long-seated Republican incumbent. No evidence has been adduced to support this contention, nor can we properly draw any inferences from mere assertions.

6. The *Plain Dealer* case was not cited to us in connection with the motion for preliminary in-

junction decided on November 3, 1989. That case was a 4–3 decision from which two of the conservative justices (the Chief Justice and Justice Kennedy) abstained. In our earlier decision, we relied upon *Metro Media, Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) and *City Council,* 466 U.S. 789, 104 S.Ct. 2118. The majority in *Plain Dealer* brushed by those decisions limiting *City Council* to a *"see also"* reference. The vigorous dissent cites both of those cases as supporting the holding that aesthetic considerations are sufficient to justify a content-neutral ban on all outdoor advertising signs, notwithstanding the extent to which the signs conveyed first amendment protected messages. 486 U.S. at 783, 108 S.Ct. at 2158 (White, J., dissenting). We are unable to reconcile the majority's decision in *Plain Dealer* with the holdings in those cases.

mission to participate in parades unconstitutional because town had discretion to choose participants on the ground of their political views). The court may go on to examine the application of the statute but without standards by which the licensing body is guided, its scrutiny is prolonged and difficult. *Plain Dealer*, 486 U.S. at 758, 108 S.Ct. at 2144. Thus, the Supreme Court has concluded that an ordinance which has both of the characteristics enumerated in *Lakewood* is an unacceptable prior restraint of speech simply because there is no standard by which to judge the fairness of the application of the ordinance.

Section 4.28(c) of the Orangetown Zoning Code carries both stigmas espoused in *Plain Dealer*. First, § 4.28(c) clearly gives the Town Board unbridled discretion as to whether to grant permission to post signs on public property. Second, no standards by which the Town Board is to guide its decision appear anywhere in the statute or in the Zoning Code. Under the rule of *Plain Dealer*, § 4.28(c) is an impermissible prior restraint on speech.

Defendant contends, nevertheless, that an ordinance administered in a constitutional manner should not be struck, pointing to cases in which the holding relies on the fact that the ordinance had been administered in a fair and impartial manner. *See, e.g., City Council*, 466 U.S. at 817, 104 S.Ct. at 2135; *Lubavitch of Iowa, Inc. v. Walters*, 873 F.2d 1161 (8th Cir.1989). Those cases are easily distinguishable on the basis that the ordinances were not challenged on the grounds that unbridled authority was vested in the licensing officials. In *City Council*, the disputed ordinance contained an all-out ban on the posting of signs—with a flat bar, no standards to guide discretion are necessary. *Lubavitch of Iowa* addressed whether a license was revoked in a discriminatory manner; lack of guiding standards in the licensing statute was not

at issue. As stated earlier, the rule we must follow is that if the court is unable to make a determination of impartial application because of the lack of guidelines, the statute must fall.

 Defendant also suggests that § 4.28(c) is constitutional because the Town of Orangetown had a legitimate purpose in enacting the challenged ordinance. Relying on *City Council*, defendant maintains that the ordinance was enacted to promote safety and aesthetic concerns of the Town which justify the passing of content-neutral legislation limiting the time, place, and manner of speech by a Town Board. *See Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746. We accept that safety and aesthetic concerns are proper legislative concerns supporting regulation of speech. But, even if § 4.28(c) were not a prior restraint, it would still be an unconstitutional limitation on speech.

It is axiomatic that where legislation restricts speech, the party seeking to uphold the restriction carries the burden of justifying it. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 2882 n. 20, 77 L.Ed.2d 469 (1983). Recently, the Second Circuit held that while concern about safety and esthetics were legitimate justifications for restricting speech, the provisions themselves must contain the rationale for the restrictions. *National Advertising Co. v. Town of Babylon*, 900 F.2d 551, 555 (2d Cir.) *cert. denied,* —— U.S. ——, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990).

In *National Advertising*, sign ordinances which effectively blocked the construction of billboards were held to be unconstitutional because the "ordinances [did] not identify the particular governmental interests sought to be advanced and the towns failed to introduce any extrinsic evidence of the interests underlying the ordinances." 900 F.2d at 555.[7] The Court was unwilling to take judicial notice of an unstated and unexplained legislative purpose

---

7. *National Advertising* concerned commercial speech which derives a lower measure of protection from the first amendment than political speech. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563–66, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980). The standards set forth in *National Ad-* *vertising* for assessing the constitutionality of ordinances banning speech are, therefore, the very minimum which must be met when the challenged statute affects political speech. Any ordinance failing the *National Advertising* test necessarily is unconstitutional, particularly when political speech is implicated.

for an ordinance which restricted speech. Similarly, it was unwilling to accept *post hoc* statements of purpose. While we have some reservations about the vitality of the *Plain Dealer* case, *see* footnote 6, *supra*, the Second Circuit's unanimous decision in *National Advertising* (which was decided after our earlier decision) is clearly on point and controls the result of this case.

Here, we have carefully reviewed both § 4.28(c) and the entire Orangetown Zoning Code, failing to find any statement of purpose for the ordinance banning signs on public property. Section 4.28(c) contains no statement of purpose. Moreover, even though the Preamble to the Zoning Code states that it was enacted to protect and promote "the public health, safety, morals, comfort, convenience, prosperity and other aspects of general welfare," and there is also some language about achieving a beneficial relationship between building and land uses and the circulation of traffic, these statements do not justify the burden on speech placed by § 4.28(c). Indeed, one of the ordinances struck down in *National Advertising* barred the obstruction of traffic and the creation of a hazard to the health and welfare of the general public. Elsewhere, that same zoning code indicated that in granting variances, consideration of esthetics, light, air and the health and welfare of the public was required. 900 F.2d at 555. These rationales, far more explicit than any proffer in the Orangetown Zoning Code, were insufficient to allow the challenged ordinance to stand. *Id.*

If an ordinance does not identify the particular governmental interest to be advanced by the ordinance, extrinsic evidence may be offered to prove the underlying purpose. *Id.* at 556. Here, however, there was no appropriate evidence. No legislative history for the ordinance exists. Moreover, an affidavit signed by the Superintendent of Highways of the Town of Orangetown states that he removed signs on the public right of ways in "an effort to keep the roads, highways and byways of the Town of Orangetown safe, clean, free of litter and in a state of natural scenic beauty." Affidavit of Charles Vezzetti (October 31, 1989), ¶ 2. These reasons, laudable as they are, do not indicate the motives for the promulgation of § 4.28(c). *National Advertising Co. v. Town of Babylon*, 703 F.Supp. 228, 235 (E.D.N.Y.1989), *aff'd*, 900 F.2d 551 (2d Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990). Finally, "mere assertions in a memorandum of law, otherwise unsubstantiated in the record are ... insufficient to ... overcome summary judgment." *Id.* In the absence of any appropriate evidence demonstrating the purposes intended to be served by the ordinance enacted by the Town of Orangetown, this Court is unable to assess whether the ordinances do implement a significant governmental interest and § 4.28(c), therefore, fails to pass constitutional muster.

For all of the foregoing reasons, we declare that § 4.28(c) of the Orangetown Zoning Code is unconstitutional. Plaintiff's motion for summary judgment with respect to Count II of his complaint is granted; his motion with respect to Count III is denied. Plaintiff has ten days from the day of this decision to advise this court as to whether he intends to prosecute Count I of his complaint.

SO ORDERED.