**Joseph PICA, Plaintiff,**

v.

**Morris SARNO, et al., Defendants.**

**Civ. A. No. 94–327.**

United States District Court,
D. New Jersey.

Sept. 5, 1995.

Nino F. Falcone, Fort Lee, NJ, for plaintiff.

Frank N. Yurasko, Somerville, NJ, for defendants.

Bruce H. Bergen, Krevsky, Silber & Brown, Elizabeth, NJ, for defendants as to punitive damages claim.

WOLIN, District Judge.

This matter is opened before the Court upon the motion of defendant Morris Sarno for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has decided the motion upon the written submissions of the parties, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the motion for summary judgment on the issues of liability and compensatory damages will be denied. Defendant's motion for summary judgment to dismiss the claim for punitive damages will be granted.

## BACKGROUND

In November, 1991, plaintiff Joseph Pica placed a wooden sign in his backyard facing an adjacent lot that was under development. (Deposition of Pica ("Pica Dep.") at 7–8). Jade Meadows Associates was developing the lot into homes for sale. The four-foot by eight-foot sign stated in painted letters, "BUYERS BEWARE. IT'S ALL DOCUMENTED. EVE 467–8499." (*Id.*) Pica al-

leges that he put up the sign because he "was extremely concerned as to the manner in which the residential housing project was being carried out and planned." (Complaint ¶ 19.) He believed the development was being built on a marshland susceptible to flooding. (Plaintiff's Brief at 3; *see also* Transcript of Hearing, Feb. 20, 1992 ("Tr.") at 6.). In his brief, plaintiff represents that he was worried about flooding. Pica himself had bought a home from Soburn Realty[1] in 1982 and was dissatisfied with numerous problems. (Pica Dep. at 14–19.) Sarno suggests in his briefs that Pica had put the sign up as revenge against Jade Meadows and Soburn Realty. (Def.'s Brief at 2–3; Def.'s Reply Brief at 3.)

Construction was underway and potential buyers visited regularly. (Pica Dep. at 52.) Some saw the sign and called Pica at his home. (Pica Dep. at 31.) Pica stated that when potential buyers called, he told them how best to protect their interests as buyers.

On November 20, 1991, Sarno, the Zoning Officer for Springfield Township in Union County, New Jersey, wrote Pica and told him to remove his sign because it violated the Springfield zoning ordinance against outdoor signs.[2] Pica did not remove the sign. Sarno issued a summons for violation of the sign ordinance. Pica appeared in municipal court and pled guilty. He paid a $100 fine and removed the sign.

Pica then applied for a sign permit in accordance with the provisions of the ordinance. The permit application was never acted upon. Later, Pica put two more signs in the back windows of his house facing the lots. (Tr. at 11.) The signs issued the same warning to potential buyers. (*Id.* at 12.) About one week later, Richard Allen, superintendent of Jade Meadows, phoned the zoning office to complain about Pica's window signs. (Sarno Aff. ¶ 5.) Sarno sent Pica a

second summons charging him with violation of another provision of Springfield's sign ordinance forbidding window signs.

Pica retained counsel for this, his second appearance in municipal court. At the trial, the prosecutor claimed that Pica's window sign violated Section 387 of the Zoning Ordinance, which prohibits: "Temporary signs, or lettered announcements used or intended to advertise or promote the interests of any person." The judge questioned Sarno as to whether Pica's application for a permit had ever been approved or denied. (Tr. at 18.) Sarno conceded he had not acted on the permit, because "it was something that was not permitted." (*Id.*) Sarno then stipulated that Pica's permit had been, in effect, rejected. (*Id.*)[3] The prosecutor emphasized that Pica violated the ordinance because his sign promoted the "interest of any person." The judge found Pica guilty of violating the zoning ordinance.

Pica appealed to the New Jersey Superior Court. In a trial *de novo*, the court found him not guilty and struck down the zoning ordinance as repugnant to the First Amendment of the United States Constitution. In its opinion, the Court reasoned that the signs were not commercial speech but a statement on a matter of public interest, and that the ordinance was over-broad and violated Pica's right to free speech. (Tr. at 5–6.)

The signs remained in Pica's windows for four or five months. (Pica Dep. at 39.) When they deteriorated, Pica removed and did not replace them. (*Id.*) Pica testified that calls from potential buyers had become so numerous they had become an annoyance. (Pica Dep. at 39–40.)

Pica filed the instant lawsuit under 42 U.S.C. § 1983 against Sarno, the members of the Springfield Planning Board, and the

---

**1.** While the record is not clear, it suggests that the home Pica bought from Soburn Realty was built by Jade Meadows.

**2.** The code provides:
603.1 *Construction Permits*
No outdoor sign or structure other than a professional sign as defined herein shall be erected, hung or placed unless a written application has been made to the Construction Code

Enforcement Official and a permit therefor has been duly issued by him upon payment of the established fee.

**3.** Indeed, Sarno's brief states that Pica could not have obtained a permit for such a sign and only a variance would have made it legal. Pica never asked the planning board to grant him a variance.

Mayor, suing each as individuals and in his or her official capacity. In April, the Court granted summary judgment in favor of all defendants save Sarno, because those defendants were not personally involved in the alleged violation.

Pica seeks compensation for denial of his First Amendment right to free speech, for the money he paid his lawyer to fight the zoning law, and for his emotional trauma and humiliation. Pica has testified in his deposition that the experience of receiving a summons and going to court was humiliating, embarrassing, and threatening. (Pica Dep. at 40–41.) His wife, Judith, testified in her deposition that her husband had missed work because he had become distressed by the experience. (Deposition of Judith Pica ("Judith Pica Dep.") at 18–19.) He also seeks punitive damages.

## DISCUSSION

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986).

Whether a fact is "material" is determined by the substantive law defining the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. 225 Cartons*, 871 F.2d 409, 419 (3d Cir.1989). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. There exists a "genuine" issue as to a material fact if the evidence would permit a reasonable jury to return a verdict for the party opposing summary judgment. *Id.* at 248, 106 S.Ct. at 2510.

When, as here, the nonmoving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party has done so, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

Sarno raises several issues in support of his motion for summary judgment. First, he asserts that Pica has failed to exhaust his claim in state court. Second, he seeks to relitigate the issue of the Springfield ordinance's constitutionality, arguing that the signs were actually commercial speech deserving a lesser degree of constitutional protection and that the Springfield sign prohibition is an acceptable "time, place, and manner" restriction on speech. Third, he claims that Pica has suffered no compensable injury. Finally, defendant argues that punitive damages are inappropriate, because Pica did not show that Sarno had the requisite evil motive or reckless disregard of Pica's federal rights.

Pica presents as genuine issues of material fact: (1) whether he has established a prima facie case that his First Amendment right was violated, (2) whether Sarno was acting under "color of law," (3) whether the sign was "political speech," (4) whether the state court judgment that the ordinance is unconstitutional is "dispositive," and (5) whether economic losses, embarrassment, and mental anguish are compensable under section 1983. These "facts," however, are quite clearly questions of law.

This Court is, of course, not bound by the New Jersey Superior Court's adjudication of federal constitutional rights. Plaintiff's argument that the First Amendment issues may not be relitigated must, therefore, rest on the doctrine of issue preclusion. The Court believes that issue preclusion would not be appropriate in this matter. Defendants, by raising the constitutional question as a defense to this action, have invoked the special jurisdiction of this Court to determine such matters. *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964). Fur-

ther, the Court notes that, for whatever reason, neither the Township nor Sarno were actually represented before the Superior Court. Therefore, the Court finds that the better course is to consider the constitutional arguments *de novo.*

Accordingly, the Court will proceed to the legal questions presented here. The constitutional issue in this case is whether Springfield's zoning ordinance is impermissible either because it regulates signs on the basis of content or because it bans an entire category of speech. The other issues presented are what damages Pica may recover, and particularly whether he can recover damages for emotional distress. As the discussion below will explain, the Superior Court was correct and the ordinance violates the Free Speech Clause. This Court will, therefore, deny Sarno's motion for summary judgment. Assuming he proves the factual predicates of his case, the Court believes that Pica may recover for any actual injury, including emotional distress. He may not, however, recover punitive damages.

**Exhaustion**

■ A plaintiff in a section 1983 suit is not required to exhaust his claim in state court. *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). "The federal remedy is supplemental to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Id.* Exhaustion is similarly not required in local administrative procedures. *Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *see also McNeese v. Board of Educ.,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). Pica did not first present his section 1983 claim in state court or administrative proceedings, nor is he required to, as Sarno has claimed.[4]

**The Constitutionality of the Ordinance**

■ Recently, the Supreme Court of the United States reaffirmed that residential signs are a form of expression entitled to the highest degree of protection by the Free Speech Clause of the First Amendment. *City of Ladue v. Gilleo,* — U.S. —, —, 114 S.Ct. 2038, 2041, 129 L.Ed.2d 36 (1994). Governments may regulate the physical characteristics of the signs for reasons of safety or aesthetics. *Id.,* 114 S.Ct. at 2041, 2044–45. A municipality may not, however, regulate signs on the basis of their content, nor may it completely ban all signs. *Id.,* 114 S.Ct. at 2043.

Defendant argues that Pica's sign was commercial speech, and so entitled to a lower degree of constitutional protection. "Commercial speech" is speech that proposes a commercial transaction, *Board of Trustees v. Fox,* 492 U.S. 469, 473–74, 109 S.Ct. 3028, 3030–32, 106 L.Ed.2d 388 (1989), or that relates solely to the economic interests of the speaker and its audience, *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n,* 447 U.S. 557, 561, 100 S.Ct. 2343, 2348, 65 L.Ed.2d 341 (1980). Defendant is correct that commercial speech is afforded less constitutional protection than is noncommercial speech on an issue of public interest. *Central Hudson,* 447 U.S. at 562–63, 100 S.Ct. at 2349–50. The Supreme Court has made clear, however, that commercial speech is protected by the First Amendment. *Linmark v. Township of Willingboro,* 431 U.S. 85, 91, 97 S.Ct. 1614, 1617, 52 L.Ed.2d 155 (1977).

■ The Court finds that Pica's sign is noncommercial speech on an issue of public interest. First, his warning proposes no commercial transaction, nor does it relate to Pica's economic interests. Second, the sign provides important advice to the public: "Buyer Beware." The sign also gives potential buyers a chance to call Pica and receive additional useful information on buying a home. Sarno has not alleged that Pica's message is untrue. The fact that Pica received so many telephone calls that it became an annoyance demonstrates the extent to

---

4. In using the word "exhaustion," Sarno may mean to imply that Pica did not seek a variance after learning his sign violated the zoning law. In this sense, Sarno is really arguing that the chance for a variance makes Springfield's ordinance a permissible restriction rather than a total ban. That argument will be considered more fully below.

which the public was concerned with his message.[5]

The Appellate Division of the New Jersey Superior Court came to a similar conclusion on strikingly similar facts. *State v. Miller,* 162 N.J.Super. 333, 338–39, 392 A.2d 1222 (App.Div.1978) (residential sign advising prospective buyers "welcome ... to this flood hazard area" was on a matter of public interest), *aff'd,* 83 N.J. 402, 416 A.2d 821 (1980). Defendant's argument that the speech was not public based on the fact that the sign was at the rear of Pica's house is without merit as it was obviously reaching its intended audience.

■ The Court must next consider whether the ordinance is a valid regulation of noncommercial speech. Governments may regulate the physical characteristics of signs. *Ladue,* — U.S. at —, 114 S.Ct. at 2041. The government's desire to prevent visual clutter, particularly in a residential neighborhood, is a legitimate government aim. Accordingly, a town may regulate the time, place, and manner in which such speech occurs. The Supreme Court has developed two methods of analyzing whether such a regulation violates the First Amendment. *Ladue,* 114 S.Ct. at 2043.

■ First, the government may not regulate signs based on their content. Content discrimination is presumptively invalid and "this presumption is a very strong one." *Ladue,* 114 S.Ct. at 2047 (O'Connor, J., concurring); *Simon and Schuster v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 115–18, 112 S.Ct. 501, 507–10, 116 L.Ed.2d 476 (1991).

In *Linmark,* a town ordinance specifically banned "For Sale" signs in front of houses. 431 U.S. 85, 97 S.Ct. 1614. Other types of signs were not banned. The town of Willingboro was seeking to maintain a racially integrated neighborhood and determined that "For Sale" signs led to panic selling by whites. *Id.* at 88–89, 97 S.Ct. at 1616–17.

The Court stated that Willingboro was pursuing a legitimate government aim. *Id.* 94–95, 97 S.Ct. at 1619–20. Nonetheless, it held the ordinance unconstitutional because it discriminated based on the content of signs. The government interest at stake did not justify stopping the flow of truthful information. *Id.* at 96, 97 S.Ct. at 1620; *see also Metromedia v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (city ordinance unconstitutional, content-based restriction because it permitted advertisements in a commercial district but banned noncommercial signs from the same district).

■ If the Court determines the regulation does not discriminate based on content, it moves to its second method of analysis, the "time, place, and manner" balancing test. A restriction on speech is valid if (1) the law makes no reference to the content of speech, (2) the law serves a significant government interest, and (3) the law leaves open alternative means of communications. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. at 1673.

The Court in *Ladue* applied the time, place, and manner test to hold that an outright ban on all signs on private, residential property violates the Free Speech Clause. — U.S. at —, 114 S.Ct. 2038. In that case, Gilleo put a two-foot by three-foot sign on her lawn that read: "SAY NO TO WAR IN THE PERSIAN GULF, CALL CONGRESS NOW." The City of Ladue told Gilleo the sign violated the zoning ordinance. She filed suit under 42 U.S.C. § 1983, seeking to enjoin the Town of Ladue from enforcing its ban on signs. The Court held that "Ladue has almost completely foreclosed a venerable means of communication that is both unique and important. It has totally foreclosed that medium to political, religious,

---

5. In any event, even commercial speech must be afforded more protection than the Springfield ordinance gives it. When a message is banned because of its content, the First Amendment has been violated regardless of whether the speech is commercial or noncommercial. *See Linmark,*

431 U.S. 85, 97 S.Ct. 1614. As will be discussed below, the restriction is clearly content-based at least as to window signs. Therefore, even if the Court were to accept the defendant's argument, it would still find the window sign ordinance unconstitutional.

or personal messages." *Id.,* 114 S.Ct. at 2045. The Court held the alternatives to residential signs were insufficient, because signs provided a cheap and easy method for a resident to express a message that will be closely associated with its author. *Id.,* 114 S.Ct. at 2046.

In the present case, Sarno's application of the Springfield zoning ordinance to Pica violated his First Amendment rights. The Court will consider the window sign ordinance and the outdoor sign separately. The window sign ordinance is unconstitutional because it discriminates based on content; the outside sign ordinance because it bans too much speech.

■ Pica's two window signs violated the window sign ordinance. This portion of the ordinance clearly discriminates among which window signs are permissible based on their content. The ordinance defines those signs that are banned as "[t]emporary signs, or lettered announcements used or intended to advertise or promote the interests of any person." The prosecutor argued during trial that Pica had run afoul of this provision. (Tr. at 24.) Just as in *Linmark,* where the Court held that the town of Willingboro could not ban "For Sale" signs simply for what they said, here Springfield may not ban window signs simply because they "promote the interests of any person." The ordinance is content-discriminatory. Moreover, because almost all speech may be construed to "promote the interests of any person," the ordinance is unconstitutionally vague because it fails to restrict official discretion in deciding who may speak and who may not.

■ The Court assumes without deciding that the outside sign ordinance does not discriminate on the basis of content.[6] Under a "time, place, and manner" analysis, the outside sign ordinance violates the First Amendment because it bans too much speech. The ordinance flatly bans all nonprofessional signs without a permit. Furthermore, when Pica applied for a permit, Sarno refused to act upon it because "it was something that was not permitted." (Tr. at 18.) The ordinance, taken in conjunction with permitting guidelines, forecloses an entire type of speech. The facts closely parallel those in *Ladue,* and the Springfield outside sign ordinance similarly violates the First Amendment.

■ Sarno argues that Pica could have sought a variance to either sign ordinance. The variance process, Sarno suggests, converts the ordinance from being a flat ban into being a permissible, flexible regulation. To the contrary, the Court believes that, as presented in this record, the variance procedure is no more than an unconstitutional prior restraint on free speech. "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969). As applied in *Abel v. Town of Orangetown,* 759 F.Supp. 161 (S.D.N.Y.1991), a town ordinance that prohibited residents from placing signs on public property without first obtaining written permission from the town board was unconstitutional. The *Abel* court stated that the ordinance granted the town board unbridled discretion to deny applications for permission to speak and provided no standards for when permission would be granted. *Id.* at 165.

In the present case, the town never acted on his permit, so in reality Springfield did not give Pica a chance to seek a variance. Moreover, it is unreasonable for Springfield to expect residents to apply to the planning board for variances and wait for and depend upon a vote, merely to exercise their First Amendment right. Springfield has not provided the Court with what guidelines, if any, the planning board might use in deciding whether to grant such a variance.

For these reasons, the Springfield sign ordinance, both on its face and as applied to

---

**6.** The outside sign ordinance prohibits all signs except "professional" signs. The record does not contain a definition of "professional." It seems highly likely that such signs must be defined by recourse to content. Nonetheless, the Court will find the outside sign ordinance unconstitutional on the alternative ground that it bans too much speech.

Pica by Sarno, violated the United States Constitution.

## Damages

The Court must determine how to measure damages in a section 1983 action by drawing an analogy to the most similar common law tort. *Carey v. Piphus*, 435 U.S. 247, 257–58, 98 S.Ct. 1042, 1049–50, 55 L.Ed.2d 252 (1978). The plaintiff may recover not only out-of-pocket expenses, but also compensation for emotional and mental distress caused by a constitutional violation. *Id.* at 264, 98 S.Ct. at 1052. However, a plaintiff may recover compensation only for those actual injuries he can prove. *Id.* at 255–56, 98 S.Ct. at 1048–49. "Distress ... is proved by showing the nature and circumstances of the wrong and its effect on the plaintiff." *Id.* at 263, 98 S.Ct. at 1052. "We use the term 'distress' to include mental suffering or emotional anguish." *Id.* at 264 n. 20, 98 S.Ct. at 1052 n. 20.

It is well settled that emotional and mental distress are recoverable for First Amendment violations. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986); *Spence v. Board of Educ.*, 806 F.2d 1198, 1200–1201 (3d Cir.1986). First Amendment "[c]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ... personal humiliation, and mental anguish and suffering.'" *Memphis*, 477 U.S. at 307, 106 S.Ct. at 2543 (quoting *Gertz v. Welch*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)) (alteration in *Memphis*). The *Memphis* Court, in quoting *Gertz*, implicitly analogized such a First Amendment claim to the injury caused by defamation.[7] In a section 1983 action, "the factfinder may measure plaintiff's testimony in light of the surrounding circumstances, and in proper circumstances award damages [for emotional distress] on the basis of plaintiff's testimony." *Hobson v. Wilson*, 737 F.2d 1, 62 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

The requisite amount of proof varies with the circumstances presented. In *Hobson*, ongoing FBI surveillance of a political organization violated plaintiffs' First Amendment right of free speech and association. The court found that under those circumstances, plaintiff's testimony that he experienced anxiety could, on remand, be enough to support a jury finding he was entitled to recover for emotional distress. *Id.* at 61.

In *Bolden v. Southeastern Pa. Transp. Auth.*, Bolden, a maintenance man, was fired after a drug test revealed marijuana use. 953 F.2d 807 (3d Cir.1991), *cert. denied*, 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). The test was held unconstitutional as violating Bolden's Fourth Amendment rights. *Id.* at 811. Bolden sued under section 1983 claiming the test results had branded him a drug user and that he had suffered extreme emotional distress as a result. *Bolden v. Southeastern Pa. Transp. Auth.*, 21 F.3d 29, 32 (3d Cir.1994), *aff'd* 820 F.Supp. 949 (E.D.Pa.1993), *on remand from* 953 F.2d 807. The Third Circuit held that testimony from lay witnesses, such as plaintiff, his wife, and his daughter, was sufficient to support a jury's finding of actual, compensable emotional distress from the constitutional violation. *Id.* at 32–33.

The constitutional provision violated in *Bolden* was the Fourth Amendment; yet *Bolden* provides a persuasive framework for assessing a plaintiff's evidence of emotional distress resulting from a First Amendment violation. Third Circuit cases dealing directly with First Amendment violations have not delineated a clear a standard for how a plaintiff may prove his emotional distress. *See, e.g., Spence v. Board of Educ.*, 806 F.2d 1198, 1203 (3d Cir.1986) ("This Circuit has not yet articulated the proper legal standard for proof of mental distress and declines to do so today.") (Higginbotham, J., concurring). However, dictum in *Spence* expressly left open the possibility that a First Amendment emotional distress claim might be proved by plaintiff's testimony alone. *Id.* at 1201.

---

**7.** Under *Gertz*, a plaintiff suing under state defamation law may recover for emotional distress and loss of reputation, but must prove actual injury.

Furthermore, as noted above, First Amendment cases draw an analogy to defamation to support the general proposition that emotional distress is recoverable if proved. *Memphis,* 477 U.S. at 307, 106 S.Ct. at 2543. *Bolden* likewise draws an analogy to defamation. *Bolden,* 21 F.3d at 35. Thus, for the limited purposes of determining how much evidence a plaintiff must produce to prove his emotional distress, *Bolden*'s framework should apply equally to First as to Fourth Amendment violations. *Bolden* persuades the Court that, under certain circumstances, the testimony of lay persons, including the plaintiff and family members who observe plaintiff may be sufficient evidence of emotional distress to overcome a summary judgment motion.

■ With these principles in mind, the Court turns to the facts of this case. Sarno argues that Pica has no compensable damages. The Court finds otherwise. There are three types of compensation Pica seeks: out-of-pocket expenses, loss of his right to communicate his message, and emotional distress. The first is easily disposed of. The money Pica paid his lawyer to defend him and to appeal his second conviction, and the lost compensation for work he missed while answering charges in municipal court were the proximate result of the constitutional tort. Accordingly, Pica may present evidence of these losses to a jury.

■ Although it is obvious from the above discussion that Pica's right to disseminate his message was impaired, plaintiff has not substantiated that the damage to his ability to publish his message was more than nominal. A plaintiff may recover for an intangible violation of a right, but he must make some case as to how he was injured. It appears that the time from which Pica was ordered to take down the first sign, until the time he was cited for putting up the second sign was ten days. (*Compare* Tr. at 9 *with* Tr. at 11). However, Pica's testimony that the window signs remained for several months and that he voluntarily removed them after this time shows that he was able to issue his warning as much as he desired and more. Sarno specifically challenged this element of damage, and Pica had the burden

to produce evidence as to injury in this respect, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The Court will therefore rule that, as a matter of law, Pica may receive no more than nominal damages for the direct injury to his ability to publish his message.

Finally, the Court will allow Pica to proceed with his claim of injury due to emotional distress. He testified in his deposition that the experience of being repeatedly haled into court caused him anxiety and humiliation. (Pica Dep. at 40.) He testified that he had become worried about "his legalities." (*Id.* at 41.) His wife testified he was unable to sleep and that he missed several weeks of work. (Judith Pica Dep. at 18–19.)

The Court must note that citizens are routinely called into court over zoning violations without suffering emotional distress. However, Pica is a citizen who has specifically fought this zoning ordinance as trenching his fundamental right to express himself. Pica's message was, at least for several months, important enough to him that he stood by his right to issue it. Pica's submissions suggest that his distress was made worse by the appearance that the very entity he was warning against, Jade Meadows, was able to invoke the power of the state and to prosecute the proceedings against him. Allen, who represented Jade Meadows, twice phoned Sarno about Pica's signs. Allen also appeared at Pica's first trial at municipal court. Pica agreed to remove his first sign, but the judge did not accept his guilty plea until Allen assured the court that he, Allen, was satisfied. These examples of private involvement in the state action against his constitutional rights provides additional circumstantial evidence of why Pica might have felt distressed.

Thus, under the legal principles discussed above, the Court finds that plaintiff has produced sufficient evidence of emotional distress to survive this motion. Under *Hobson,* the surrounding circumstances support plaintiff's claim. 737 F.2d at 62. As in *Bolden,* plaintiff has submitted his own testimony and that of family members. 21 F.3d at 32–33. The Court is satisfied that a reasonable juror

could find that this evidence shows compensable emotional distress.

**Punitive Damages**

In the present case, Pica sued Sarno both in his official capacity and as an individual. When a defendant is sued "in his official capacity" under section 1983, liability is imposed on the municipality he represents. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Punitive damages, however, may not be assessed against a municipality in a section 1983 action. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Thus, a plaintiff may not recover punitive damages when he sues an official "in his official capacity."

A plaintiff may recover punitive damages from a defendant official sued in his "individual capacity." The Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 55, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983).

Here, however, Pica has failed to show sufficient evidence that Sarno acted with evil motive or intent, or reckless disregard of Pica's rights. Sarno was enforcing a municipal ordinance.[8] This fact creates a strong presumption that Sarno did not believe he was violating Pica's rights. It is true that Allen twice called the zoning office, spurring Sarno to action. However, it is likely a great many zoning violations are brought to Sarno's attention by irritated neighbors.

Pica points out that Sarno's testimony was inconsistent and asks the Court to infer from these inconsistencies that Sarno is hiding the truth. The inconsistencies are minor, however, and do not sufficiently show Sarno was motivated by evil motive in enforcing the zoning ordinance to support Pica's burden.

Therefore, the Court will dismiss the claim for punitive damages in this case.

## CONCLUSION

Springfield's zoning ordinance violates the Free Speech Clause both because it discriminates based on content when applied to "window signs," and because it flatly bans an entire type of speech when applied to outside signs. Sarno's motion for summary judgment is thus denied as it is clear that plaintiff's First Amendment rights were violated, Pica may recover for injuries proximately caused by the constitutional violation, including those for emotional distress, so long as he can prove he actually suffered them. He may not, however, recover punitive damages, because he has failed to show Sarno acted from evil motive or with a reckless disregard for Pica's federal rights. Accordingly, Sarno's motion for summary judgment will be denied as to liability and compensatory damages with one proviso. As to the injury to plaintiff's ability to publish his message, the Court will grant summary judgment to defendant to the extent that plaintiff may receive no more than nominal damages. Defendant's motion will be granted on the issue of punitive damages, and that part of the Complaint will be dismissed.

An appropriate Order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 5th day of September, 1995,

ORDERED that defendant Morris Sarno's motion for summary judgment is denied in part and granted in part; and it is further

ORDERED that defendant's motion is denied on the issue of liability for violation of plaintiff's rights under the First Amendment of the Constitution; and it is further

ORDERED that defendant's motion is denied on the issue of compensatory damages, except that plaintiff may receive no more

---

8. Sarno did not raise the issue of absolute or qualified immunity in his motion and the Court therefore will not consider it. The Court notes, however, that Sarno may only invoke immunity in his individual capacity. A municipality may not shield itself behind immunity in a section 1983 suit. *Brandon v. Holt,* 469 U.S. 464, 472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985); *Owen v. City of Independence,* 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980).

than nominal damages for the interference with his ability to publish his message; and it is further

ORDERED that defendant's motion is granted on the issue of punitive damages, and that part of his complaint that claims punitive damages is hereby dismissed.