OPINION OF THE COURT
Richard A. Goldberg, J.
Plaintiff City of New York (City) brought this nuisance abatement action, alleging that defendants, as owners and operators of a billboard sign and structure maintained on premises located at 153-157 Hamilton Avenue, Brooklyn, New York, and located within an Ml manufacturing zoning district, (1) created a public nuisance within the meaning of section 7-703 (k) of the Administrative Code of the City of New York by violating section 42-53 of the New York City Zoning Resolution (the Zoning Resolution); (2) violated sections 27-147, 27-148 and 27-498 of the Administrative Code; and (3) created a common-law nuisance. The City now moves for a preliminary injunction enjoining defendants from maintaining the alleged public nuisance by ordering them to remove the sign and structure allegedly erected without a permit and located within 200 feet of an arterial highway and visible therefrom.[1] Defendants contend that the aforesaid regulations impose an unconstitutional restriction on their First Amendment rights to free speech under the United States Constitution.
Moen Electric Corp. (Moen) is the owner of the subject premises, upon which is located a building used as an electrical supply store. Thomas Migliaccio is the president of Moen. Ace Sign and Rigging Corp. (Ace) owns the sign structure erected on top of the Moen building. The subject premises are located within an Ml manufacturing zoning district that is within 200 feet of the Brooklyn-Queens Expressway.
*709 Earl Prentice, an inspector and supervisor for the New York City Department of Buildings, whose duties included the inspection of premises within the borough of Brooklyn to determine if they are in compliance with the Administrative Code and the Zoning Resolution, states in his affidavit that he visited the Moen premises on September 26, 1994 and there observed "an illuminated, double-faced advertising billboard, measuring approximately fourteen by forty feet” within 200 feet of the Brooklyn-Queens Expressway and that the signs on each side of the billboard contained the following copy: "Call 1-212-COP-SHOT. $10,000 for the Arrest and Conviction of Anyone Shooting a N. Y. C. Police Officer.” Prentice concluded that the billboard had been erected without the necessary permits in violation of sections 27-147, 27-148 and 27-498 of the Administrative Code and was in violation of section 42-53 of the Zoning Resolution. He then issued notices of violation.
Prentice also states that on April 15, 1995, he again visited the premises and observed the same billboard. At that time, one side of the billboard was blank and the other side read: "Acura. The Acura TL. A New Direction.”
In response to plaintiffs motion, defendants submit a Department of Buildings approval for the proposed illuminated "roof / ground sign * * * accessory business sign” dated August 27, 1990. On said approval it is noted that the tenant of the relevant premises was Philip Morris and that the text for the sign was to be "variable copy * * * Marlboro * * * Parliament”. Defendants also submit the Department of Buildings approval, dated October 17, 1989, for the installation of a "structure for business sign”, and a work permit for the installation of a "structure for business sign”. The City states that the Department of Buildings’ approval and issuance of the work permit were based on the statement on the application that the structure was for a "business sign”. The City also states that approval for "the wording, image and dimensions of the sign * * * itself’ is based on the sign’s conformance "with the applicable provisions of the Administrative Code and the Zoning Resolution”. The City does not contend and offers no evidence that the erection or maintenance of the sign violates any other provision of the City’s building code.
Sections 27-147, 27-148 and 27-498 of the Administrative Code forbid, inter alia, the erection of outdoor sign structures without the issuance of a written permit.
Section 41-00 of the Zoning Resolution states that the general purposes of the provisions of the Resolution for manufacturing districts are "public health, safety, and general welfare.”
*710 Section 11-111 of the Zoning Resolution provides that "[i]n all districts [after December 15, 1961,] any new building or other structure or any tract of land shall be used, constructed, or developed only in accordance with the use, bulk, and all other applicable regulations of this resolution.”
Section 12-10 of the Zoning Resolution defines an advertising sign as "a sign which directs attention to a business, profession, commodity, service, or entertainment conducted, sold, or offered elsewhere than upon the same zoning lot,” and defines a business sign as "an accessory sign which directs attention to a profession, business, commodity, service, or entertainment conducted, sold, or offered upon the same zoning lot.”
Section 12-10 of the Zoning Resolution exempts the following from the provisions of the New York City Zoning Resolution:
"(a) Signs of a duly constituted governmental body: including traffic or similar regulatory devices, legal notices, or warnings at railroad crossings
"(b) Flags or emblems of a political, civic, philanthropic, educational, or religious organization
"(c) Temporary signs announcing a campaign, drive, or event of the above organizations "(d) Memorial signs or tablets
"(e) Signs denoting architect, engineer, or contractor when placed on construction sites and not exceeding 25 square feet in area
"(f) Signs required to be maintained by law or governmental order, rule, or regulation, with a total surface area not exceeding ten square feet on any zoning lot
"(g) Small signs displayed for the direction or convenience of the public, including signs which identify rest rooms, freight entrances, or the like, with a total surface area not exceeding five square feet on any zoning lot.” (Zoning Resolution § 12-10, "Sign”.)
Section 42-52 of the Zoning Resolution provides that "accessory business signs or advertising signs are permitted with no restrictions on size, illumination, or otherwise, except as provided in * * * Section 42-53.” Section 42-53 provides that, in Ml, M2 and M3 districts, "no advertising sign shall be located * * * within 200 feet of an arterial highway * * * if such advertising sign is within view of such arterial highway.” Appendix C of the Zoning Resolution lists the Brooklyn-Queens Expressway as an arterial highway.
In 1980, the City Planning Commission (the Commission) proposed an amendment to the Zoning Resolution to incorpo *711 rate the standards of the Federal Highway Beautification Act of 1965 (the Act) (23 USC § 131) for advertising signs near arterial highways in certain commercial and manufacturing districts. The Commission resolution stated that the City was "facing an impending loss of $25 million in federal highway funds unless it complies with the * * * Act”, which "would require the enforcement of local zoning controls affecting off-premises advertising signs within 660 feet of an arterial highway.” The amendment to section 42-53 of the Zoning Resolution "grandfathers” certain advertising signs existing prior to November 1, 1979. In enacting the amendment, the City Planning Commission adopted the intent of Congress, as stated in 23 USC § 131 (a), that, inter alia, "the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.” The Commission noted that "local zoning controls are more stringent than [the] standards set forth in” the Act.[2]
The City contends that the sign is illegal because permits for an "advertising” sign were not obtained as they should have been since the advertising copy on the sign directs attention to a business elsewhere than on the same lot. The City further contends that the sign is in violation of section 42-53 of the Zoning Resolution because the sign is an advertising sign in an Ml manufacturing zoning district and located within 200 feet of the Brooklyn-Queens Expressway and visible therefrom.
*712 The City maintains that the cited sections of the Administrative Code and the Zoning Resolution are a proper exercise of its police power to regulate outdoor advertising and relies on Suffolk Outdoor Adv. Co. v Hulse (43 NY2d 483 [1977]) for said proposition, and further argues that the New York City Zoning Resolution does not restrict speech based on content. Defendants challenge the cited provisions as violative of their First Amendment rights and rely chiefly on Metromedia, Inc. v San Diego (453 US 490 [1981]) for the proposition that, while the City may give greater protection to one form of commercial speech over another, it may not afford any commercial speech greater protection than noncommercial speech nor prefer one category of noncommercial speech over any other.
It is beyond dispute that, in the exercise of its police power, the City may regulate commercial speech, and, indeed, prefer one type of commercial speech over another. As the plurality opinion in Metromedia noted, in discussing a San Diego ordinance that prohibited city-wide, offsite commercial billboards while permitting onsite commercial billboards, "[t]he city has decided that in a limited instance — onsite commercial advertising — its interests [in traffic safety and esthetics] should yield. We do not reject that judgment. As we see it, the city could reasonably conclude that a commercial enterprise — as well as the interested public — has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere.” (Metromedia, Inc. v San Diego, supra, 453 US, at 512.)
Thus, for example, the Supreme Court reaffirmed its summary dismissal in Suffolk Outdoor Adv. Co. v Hulse (439 US 808 [1978]) based on the lack of a substantial Federal question, of an appeal from the Court of Appeals decision upholding an ordinance prohibiting nonaccessory (offsite) billboards. (Metro-media., Inc. v San Diego, supra, 453 US, at 499.) The Court, however, noted that that ordinance "did not sweep within its scope the broad range of noncommercial speech” prohibited by the San Diego ordinance. (Supra; see also, Town of Carmel v Suburban Outdoor Adv. Co., 127 AD2d 204 [2d Dept 1987].)
In its analysis of the San Diego ordinance, the Metromedia plurality concluded that "(1) a sign advertising goods or services available on the property where the sign is located is allowed; (2) a sign on a building or other property advertising goods or services produced or offered elsewhere is barred; (3) *713 noncommercial advertising, unless within one of the specific exceptions, is everywhere prohibited.[3] The occupant of property may advertise his own goods or services; he may not advertise the goods or services of others, nor may he display most noncommercial messages.” (Metromedia, Inc. v San Diego, supra, 453 US, at 503.) This regulatory scheme was found to be constitutionally infirm as it favored onsite commercial advertising over noncommercial messages and permitted certain categories of noncommercial messages while barring others.
Applying these principles to the instant case, it is clear that the Zoning Resolution similarly violates the First Amendment.
Under the regulatory scheme contemplated by the Zoning Resolution, the use of land and structures thereon is permitted only to the extent provided for in the Zoning Resolution itself. In Ml manufacturing zones, signs within 200 feet of an arterial highway and visible therefrom are permitted only if they advertise or promote a business located on the same zoning lot. Offsite advertising signs are generally forbidden.[4] Signs containing noncommercial messages are also generally forbidden except for those specifically enumerated in the Zoning Resolution. Further, the Department of Buildings, when faced with an application for a structural permit for a sign or application for an illuminated sign permit, reviews the content of the sign’s message to determine whether the proposed sign is in conformance with the provisions of the Zoning Resolution. It is clear, and essentially undisputed by the City, that defendants’ failure to obtain approval for an alteration in sign copy forms the only basis for the City’s allegation that defendants have violated the building code.
*714 The "Cop Shot” message was cited by the City in a notice of violation, yet the City concedes that the same billboard advertising the Moen electrical store would not violate the Zoning Resolution. Thus, the City has impermissibly concluded "that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.” (Metromedia, Inc. v San Diego, supra, 453 US, at 513.) Although the City disingenuously argues that the "Cop Shot” message would be permitted if it were on a sign located at a police station, such argument ignores the myriad of noncommercial messages that are not of necessity related to a parcel of real property. Further, such argument underscores the Metromedia prohibition of a governmental preference for one type of noncommercial message over another. As did the San Diego ordinance, the Zoning Resolution exempts certain noncommercial messages from its provisions. Thus, for example, the exemption for a temporary sign for a political campaign from the provisions of the Zoning Resolution gives greater value to such message than to a sign generally supporting a particular political view. Such judgments as to the relative value of the subjects of noncommercial speech violate the First Amendment. (Metromedia, Inc. v San Diego, 453 US, at 516; see also, National Adv. Co. v Town of Babylon, 703 F Supp 228, 239 [ED NY 1989] [a town makes an unconstitutional determination when it says that " Vote for X’ at election time is more important than saying for example 'save the whales’ at various times throughout the year”], read on other grounds 900 F2d 551, supra.) Finally, although the City argues that section 42-53 of the New York City Zoning Resolution merely distinguishes between onsite and offsite advertising, that argument would essentially require the court to ignore the other provisions of the Zoning Resolution that operate, along with the cited provision, to construct an unconstitutional scheme. The scheme unconstitutionally favors onsite commercial advertising over noncommercial messages and permits certain categories of noncommercial messages while barring others. Section 42-53 simply cannot be read as a stand-alone provision; the court must consider the constitutional viability of the entire regulatory scheme as set forth in sections 12-10, 42-52 and in 42-53. Thus, while it is possible that the regulatory scheme, only as it favors onsite commercial advertising over offsite commercial advertising, could pass constitutional muster, the court believes that any rewriting of the Zoning *715 Resolution should be undertaken by the City itself and not by the judiciary. Although the Zoning Resolution contains a severability provision, making it possible for the court to enjoin only the constitutionally infirm provisions thereof and not the entire design, and although merely exempting all noncommercial speech from the provisions of the Zoning Resolution may resolve the constitutional issue, the latter task must be undertaken by the City and not by the court. Here, as demonstrated by the "Cop Shot” violation, the distinction between commercial and noncommercial speech is easily blurred, and the constitutional and unconstitutional provisions are inextricably interwoven. (National Adv. Co. v Town of Babylon, supra, 900 F2d, at 557; National Adv. Co. v Town of Niagara, 942 F2d 145, 148 [2d Cir 1991].)
It is ordered that the City’s motion for a preliminary injunction is denied; and it is further ordered that the City is hereby enjoined from enforcing sections 12-10, 42-52 and 42-53 of the Zoning Resolution; and it is further ordered that the City’s complaint is dismissed in its entirety.

. The action captioned City of New York v Allied Outdoor Adv. (index No. 8851/96) had been joined for the purpose of trial with the instant action. Plaintiff has now discontinued that action with prejudice.

. The City argues that the legislative reasons, as stated by the Commission, for adopting the amendment to section 42-53 of the Zoning Resolution provide a sufficient basis for its restriction of offsite commercial advertising. It is clear, however, that the amendment merely "grandfathers” certain signs and does not, in any other way, change the provisions of section 42-53. The Act requires merely that the City rigorously enforce its own zoning regulations for billboard advertising. Thus, while the amendment is supported by Congress’ determination, as adopted by the Commission, that regulation is necessary to protect the public investment in highways, to promote safety and recreational value, and to preserve natural beauty, the original section 42-53 is merely supported by the general statement that the Zoning Resolution’s purpose is "public health, safety and general welfare.” For the reasons described ante, the court need not determine at this time whether these purposes meet the third prong of the test articulated in Central Hudson Gas & Elec, v Public Serv. Commn. (447 US 557, 566 [1980]), requiring the assertion of a substantial governmental interest to support a determination to favor onsite commercial advertising over offsite commercial advertising. (See also, National Adv. Co. v Town of Babylon, 900 F2d 551, 555-556 [2d Cir 1990].)

. It must be noted that although the San Diego ordinance applied citywide and the provisions of the Zoning Resolution at issue here apply only in a relatively narrow strip along arterial highways, the distinction is of no consequence. The Metromedia analysis focused on the greater value that San Diego placed on onsite commercial signs and rejected the argument that the ordinance was a reasonable "time, place and manner’’ regulation. "[T]ime, place, and manner restrictions are permissible if 'they are justified without reference to the content of the regulated speech’ ” (Metromedia, Inc. v San Diego, supra, 453 US, at 516, quoting Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 771 [1976]), not where, as in San Diego and herein, various kinds of signs, based on the content of their messages are permitted.

. As described above, the Zoning Resolution does provide for a legal, nonconforming status of certain advertising signs that were erected prior to particular dates.